UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DIANA COFFEY, on her own behalf and on behalf
of the estate of ANDREW CRUTCHER, deceased,
and also, as next friend, on behalf of her minor
grandchildren, JOANELLE CRUTCHER,
RACHELLE CRUTCHER, ALEX BENALLY,
ANDREW CRUTCHER, VICK CRUTCHER,
KITANA CRUTCHER, and DREW CRUTCHER,

    Plaintiff,

vs.                                                                CV No. _____

UNITED STATES of AMERICA,

    Defendants.
_____

## CIVIL COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH AND CIVIL RIGHTS VIOLATIONS

    Comes now, Diana Coffey, the plaintiff herein, who brings this action on her own behalf, on behalf of the estate of Andrew Crutcher, deceased, and on behalf of her minor grandchildren, identified above in the caption, alleges as her complaint the following:

### Jurisdiction

    1.    This case arises under the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §1346(b) and 28 U.S.C. §2671 et seq., and also pursuant to 28 U.S.C. §1331.

    2.    The plaintiff filed with the Department of Health and Human Services a timely administrative claim under the FTCA for damages. That claim has not been acted upon and more than six months have elapsed since the date it was filed.  Plaintiff has now exhausted her administrative remedies as required by the FTCA and the claim may be deemed denied. Plaintiff is thus authorized by law to file this action at this time

1

against the United States.

3. The venue of this action is properly placed in the District of New Mexico pursuant to 28 U.S.C.§ 1391 because the incidents that gave rise to this claim occurred in Gallup, New Mexico.

## Parties

4. Diana Coffey is the natural mother of Andrew Crutcher and the natural grandmother of the minor children, who are the biological children of Andrew Crutcher. She is also serving in her capacity as the personal representative of the estate of Andrew Crutcher.

5. The United States of America, upon information and belief, entered into a contract with the Reno Sparks Indian Colony to house inmates convicted of crimes on the Colony. The United States of America, through the Bureau of Indian Affairs, held Andrew Crutcher in its custody and transported Andrew Crutcher to the McKinley County Detention Facility in Gallup, New Mexico, from Reno, Nevada, where the United States continued to incarcerate Mr. Crutcher until Mr. Crutcher died.

## General Allegations

6. Andrew Crutcher was a 28 year old Paiute-Shoshone man who lived on the Reno Sparks Indian Colony for most of his life.

7. Andrew Crutcher's family has lived on the Reno Sparks Indian Colony for several generations.  His mother and grandfather, and great-grandfather have served on the Reno Sparks Indian Colony Council.

8. Andrew Crutcher was the biological father of plaintiff's grandchildren i.e., Joanelle Crutcher, Rachelle Crutcher, Alex Benally, Andrew Crutcher, Vick Crutcher, Kitana Crutcher, and Drew Crutcher, all minor children.

9. Early in the year 2006, Andrew Crutcher was charged in tribal court with a misdemeanor, discharging a firearm within the Colony boundaries, his first known legal offense. A warrant was issued on March 7, 2006, and a criminal complaint was issued by the tribal court on March 9, 2006.  Mr. Crutcher's bond was set by the tribal judge at $3,000.00, cash only.

10. Andrew Crutcher was arraigned on March 10, 2006.

11. On April 25, 2006, Andrew Crutcher was convicted of the misdemeanor and sentenced by the tribal judge of the Reno Sparks Indian Colony to three hundred sixty-five (365) days of incarceration, to be served in the Washoe County Detention Facility until the Bureau of Indian Affairs could take him into custody and transport him to a BIA facility for the remainder of his jail term.

12. The Reno Sparks Indian Colony provided a pre-sentence investigation, which showed that Andrew Crutcher had no prior convictions involving a firearm.

13. The court system of the Reno Sparks Indian Colony imposed a sentence of incarceration even though it had no jail and no means of incarcerating prisoners within the Colony. It relied, instead, on the Bureau of Indian Affairs, a federal agency within the Department of the Interior.

14. Andrew Crutcher was remanded to the Washoe County jail sometime in June, 2006, and he remained there until October, 2006.

15. Andrew Crutcher suffered from congestive heart failure and was required to take medication to treat his heart condition. His heart medication was essential to his survival and his health.

16. Upon information and belief, Andrew Crutcher received his medication at the Washoe County Detention Facility on a regular basis, and as prescribed. When he left the Washoe County Detention Facility, on or about the first week of October 2006,

he was driven away in a van belonging to the Bureau of Indian Affairs. At that time he was, by all appearances, in reasonably good health.

17. On December 19, 2006, Andrew Crutcher was brought before the tribal court by telephonic hearing for a determination of whether he would be released from jail; and the release was denied.

18. The court was informed of the health condition and needs of Andrew Crutcher.

19. At the time the BIA took custody of Andrew Crutcher, it knew of the health condition and needs of Andrew Crutcher. Specifically it knew he had a pre-existing condition of congestive heart failure and that he required regular heart medication, which had been prescribed to him by his physician prior to his incarceration.

20. After taking custody of Andrew Crutcher and removing him from the Washoe County Detention Facility, the BIA transported Mr. Crutcher to Gallup, New Mexico, where he was incarcerated in the McKinley County Detention Facility to serve the remainder of his tribal court sentence.

21. Upon information and belief, the McKinley County Detention Facility, which is located in Gallup, New Mexico, housed inmates from outside New Mexico on behalf of the Bureau of Indian Affairs.

22. Andrew Crutcher was serving time for his first misdemeanor offense and had served a faultless first six months at the Washoe Detention Facility, where he had taken classes and completed his GED. He was found to be well qualified to attend college.

23. At Gallup, Andrew Crutcher was nearly 900 miles from his family. He had no friends or family in New Mexico.

24. After Andrew Crutcher arrived in Gallup, the BIA failed to provide Mr.

Crutcher with appropriate and necessary access to medical services, and did not provide Mr. Crutcher with his prescribed heart medication. The BIA also failed to see the McKinley County Detention Center addressed Mr. Crutcher's medical needs.

25. After a few weeks, Andrew Crutcher called his family to tell family members he was not receiving proper medical attention in New Mexico and had not been seen by a physician in New Mexico. At this time his health was already beginning to deteriorate.

26. Family members contacted the Reno Sparks Indian Colony Tribal Court, without success, being told that the BIA had no procedure in place to assist families in reaching inmates or in providing assistance to inmates from families of persons incarcerated under the management and control of the BIA.

27. The BIA had no communication with the family of the Andrew Crutcher, nor was there any means provided for the family to communicate directly with the BIA about Mr. Crutcher. Plaintiff Diana Coffey had no means of contacting either the McKinley County Detention Facility or the BIA to get help for her son. Although plaintiff contacted the Reno Sparks Indian Colony, it offered no assistance in getting help for her son.

28. The BIA failed to ensure that Andrew Crutcher received the medication necessary for his survival while incarcerated, even though it had a legal duty to do so. This failure to provide needed medication to a person under its control was negligent.

29. Inmates incarcerated with Andrew Crutcher tried in vain to plead with the prison staff to allow Andrew Crutcher access to medical treatment and repeatedly told staff that Andrew was failing and had not received the heart medication he needed.

30. Andrew Crutcher was locked down and not given access to a doctor or any medical personnel during the week prior to his death.

31. On or about February 8, 2007, Andrew Crutcher died while he was incarcerated by the BIA in Gallup, New Mexico. Upon information and belief, he died approximately twenty minutes after finally being transported to a local hospital. This was done, however, only after jail staff found Mr. Crutcher in bed, in severe distress, unable to move.

32. Even after Mr. Crutcher's death, and even though Andrew Crutcher was incarcerated at the time of his death, the BIA failed to have in place and follow a reasonable procedure for the return of the body to his family.

33. The plaintiff herein was devastated to lose her young son and the father of her grandchildren, especially in such a cold-hearted manner in which the BIA and the McKinley County Detention Center completely neglected Mr. Crutcher's medical condition. Plaintiff was not able to see her son after his transfer to Gallup and before his death, and she even had to fight with the BIA over its failure to return his body to his home and his family.

## CAUSE OF ACTION
## [WRONGFUL DEATH DUE TO NEGLIGENCE]

34. Plaintiff incorporates each of the prior paragraphs of this complaint as if set out fully in this section.

35. Upon information and belief, Andrew Crutcher was in reasonably good health as long as he was taking his heart medication; he was taking that medication and in reasonably good health on the date he entered BIA custody and was transported by the BIA to Gallup, New Mexico, to be jailed at the behest of the BIA in the McKinley County Detention facility.

36. The defendants and its employees were under a duty to exercise reasonable care to protect the health and welfare of Andrew Crutcher while he was in

their care and custody.

37. Employees of the BIA knew or should in the exercise of reasonable care have known that Andrew Crutcher required medication while he was incarcerated and that he had a life threatening condition if the medication was not available to him.

38. The BIA failed properly to screen Andrew Crutcher when it took custody of him and when he entered the jail facility in Gallup, it further failed to monitor and recheck him for medical problems after he was taken into the facility, it failed to insure that Andrew Crutcher was given his prescribed medication or seen by medical personnel for his condition, it failed to communicate Mr. Crutcher's healthcare needs to the McKinley County Detention Facility, it failed to provide proper oversight of Mr. Crutcher's incarceration, it failed to provide a means of communication for Mr. Crutcher and his family to communicate with one another and with the BIA, and it failed to provide timely and adequate medical care for Andrew Crutcher. All of these failures were negligent and violated the duty of reasonable care owed to Mr. Crutcher.

39. The defendants failed to ensure and maintain the health and welfare of Andrew Crutcher while he was in custody.

40. The defendant and its employees negligently caused the death of Andrew Crutcher without any justification or excuse.

41. The defendant United States is liable for the negligent acts of its employees who were acting within the scope of their employment relationship.

42. The negligent actions and omissions of employees of the United States in negligently failing properly to provide adequate medical care to Andrew Crutcher while he was incarcerated were actions and omissions for which the United States would be liable to plaintiff for negligence under the laws of the State of New Mexico, the place

where the incident occurred, if the United States were a private individual guilty of the same negligence.

## DAMAGES

43. The plaintiffs, the natural mother and natural children of Andrew Crutcher, have suffered the loss of a son and father because of the negligence of the defendant, and the estate of Mr. Crutcher has suffered damages as recognized in the New Mexico Wrongful Death Act, §41-2-1, et seq., NMSA 1978, i.e., the present value of the life of decedent, including his enjoyment of life, having regard to the aggravating circumstances attending the wrongful and unlawful acts that resulted in his death, as provided for by New Mexico law. Such damages include damages for the value of the loss of life itself, as well as economic damages, including loss of household services and non-medical expense. The damages recoverable are more fully set forth in the Uniform Jury Instructions, No. 18-1830.

44. Defendant is liable for the wrongful death of Andrew Crutcher and for all damages arising from its negligent handling of Mr. Crutcher's medical condition, including loss of consortium damages for his mother and his children, the latter of which claims are coupled with loss of guidance, counseling, and parental supervision.

45. The plaintiffs have suffered additional damages according to New Mexico common law. Prior to his death, Andrew Crutcher endured intense pain, conscious suffering, intense emotional distress, and fear during the time period beginning with the onset of symptoms of acute congestive heart failure in Gallup, New Mexico, until the time of his death. Therefore, the estate of Andrew Crutcher is entitled to recover pre-death general compensatory damages in an amount to be determined at the trial in this cause.

46. The estate of Andrew Crutcher incurred reasonable and necessary medical

expense and expense for funeral and burial costs.  Therefore, the estate of Andrew Crutcher is entitled to recover these special damages in an amount to be determined at trial.

## CONCLUSION

**WHEREFORE**, plaintiff prays that the court enter judgment for her, that she be awarded compensatory damages for all losses allowed by law, including damages provided for under New Mexico law for wrongful death; pre-death damages, including fear, physical pain, and emotional suffering; for loss of consortium for herself and for the children of Andrew Crutcher; for allowable costs; and for such other relief as the court adjudges proper under applicable law and the circumstances of this case.

Respectfully submitted,

BARBER & BORG, LLC
P.O. Box 30745  (87109)
4105 Montgomery, NE
Albuquerque, NM  87190-0745
(505) 884-0004
(505) 884-0077 (fax)
Email:   scott@barberborg.com

HAGER & HEARNE
Treva J. Hearne, Nevada Bar #4450
910 E. Parr Blvd.,#8
Reno, Nevada  89512


By_____/s/_____
          Scott E. Borg, Esq.

ATTORNEYS FOR PLAINTIFF

Dated this 17th day of June, 2008.