## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DIANA COFFEY, on her own behalf and on behalf
of the estate of ANDREW CRUTCHER, deceased,
and also, as next friend, on behalf of  her minor
grandchildren, JOANELLE CRUTCHER,
RACHELLE CRUTCHER, ALEX BENALLY,
ANDREW CRUTCHER, VICK CRUTCHER,
KITANA CRUTCHER, and DREW CRUTCHER,

       Plaintiff,

vs.                                                                        No. CIV 08-0588 JB/LFG

UNITED STATES OF AMERICA,

       Defendant.

DIANA COFFEY and DIANA COFFEY
on behalf of her minor grandchildren I-VII,
and the ESTATE OF ANDREW CRUTCHER,

       Plaintiff,

vs.                                                                        No. CIV 09-0028 JB/LFG

McKINLEY COUNTY as it relates to its
DETENTION CENTER and UNKNOWN
STAFF NURSE, and UNKNOWN DETENTION
GUARDS 1-10, at the McKINLEY COUNTY
ADULT DETENTION CENTER,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendants McKinley County and

United States of America's Motion to Dismiss and/or Strike Plaintiff's "Amended and Consolidated

Complaint" and for Such Other Relief as Is Appropriate, filed August 28, 2011 (Doc. 72)("Motion

to Strike");[1] and (ii) the Plaintiff's Motion for Leave to File Amended and Consolidated Complaint and Motion to File Amended Response to Motion for Summary Judgment and Request for Leave to File Additional Pages of Exhibits, filed September 7, 2011 (Doc. 79)("Motion to Amend").  The Court held a hearing on September 30, 2011.  The primary issues are whether the Court should: (i) strike a pleading Coffey filed without seeking the Court's leave; (ii) allow Coffey to amend her pleadings; (iii) grant Coffey leave to amend her response to The County Defendant's Motion for Summary Judgment, filed August 1, 2011 (Doc. 78 in the civil case docket number 09-0028)("Motion for Summary Judgment"); and (iv) grant Coffey leave to exceed the page limits for exhibits established by local rule.  The Court will grant the Motion to Strike, as Coffey does not contest the Court granting this motion.  The Court will grant in part and deny in part the Motion to Amend.  The Court will allow Coffey to amend her pleadings, but will not allow her to include in her amended pleadings any medical malpractice claim or theory against any federal facilities. Coffey can include her wrongful death/negligence claim against the Defendant United States of America in her amended pleadings, but only for her theories regarding negligent screening, negligent transfer, and negligent hand off.  If the United States requires additional discovery to address the wrongful death/negligence claim it should consult with Coffey to resolve that issue.  If the parties are unable to come to an agreement on discovery, the United States may file a request listing the discovery it requires on the claim and related defenses, specifying the purpose for which it seeks the discovery.  To facilitate additional discovery, the Court advises Coffey that it will be inclined to be liberal in allowing the United States to conduct additional discovery.  If the United States requires an additional expert to address these claims, it may designate an expert to testify

---

[1]All docket entries refer to the docket entries for the civil case docket number 08-0588 unless otherwise specified.

regarding this claim.  The United States must otherwise comply with the applicable rules regarding expert discovery contained in rule 26 of the Federal Rules of Civil Procedure.  The Court will allow Coffey leave to file an amended response to Defendant McKinley County's Motion for Summary Judgment.  The Court will allow Coffey to exceed the limit on page numbers for exhibits attached to her response to McKinley County's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

On June 17, 2008, Coffey filed her Civil Complaint for Damages for Wrongful Death and Civil Rights Violations against the Defendant United States of America.  See Doc. 1 ("Original Complaint").  On October 21, 2009, the Honorable Martha Vasquez, then-Chief United States District Judge for the United States District for the District of New Mexico,[2] consolidated the civil case docket number 08-0588, Coffey's case against the United States, with the civil case docket number 09-0028, Coffey's case against McKinley County, for discovery purposes.  See Order at 1-2, filed October 21, 2009 (Doc. 33).  Civil case No. 09-0028 against McKinley County was assigned to the Honorable James O. Browning, United States District Judge.  Judge Vasquez's Order stated that Judge Browning would preside over the discovery matters.  On November 22, 2010, Judge Browning issued a scheduling order setting an August 1, 2011 deadline for all pretrial motions, other than discovery motions.  See Scheduling Order at 2 (Doc. 42).  On January 17, 2011, Coffey filed her Motion for Leave to File Amended Complaint.  See Doc. 46.  On January 24, 2011, Judge Browning granted Coffey's Motion for Leave to File Amended Complaint.  See Order Granting Motion for Leave to File Amended Complaint (Doc. 47).  On January 24, 2011, Coffey filed her (Proposed) First Amended and Consolidated Complaint.  See Doc. 48 ("First Amended and

_____

[2]The Honorable Bruce D. Black, United States District Judge, became Chief Judge of the District of New Mexico in 2010.

Consolidated Complaint"). On May 19, 2011, Coffey filed an errata regarding her First Amended and Consolidated Complaint. See Errata First Amended and Consolidated Complaint (Doc. 56). On July 28, 2011, Coffey filed her Second Amended and Consolidated Complaint. See Doc. 61. On July 29, 2011, the parties filed a joint motion to consolidate the civil case docket number 08-0588 with the civil case docket number 09-0028 case for trial purposes. See Joint Motion and Memorandum for Consolidation of Cases for Trial Before United States Magistrate Judge (Doc. 62). On August 1, 2011, the United States filed its Defendant United States of America's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Supporting Memorandum of Law. See Doc. 63. On August 22, 2011, Judge Vasquez granted the motion seeking consolidation of the cases for trial purposes and stated that Judge Browning would try both cases. See Order (Doc. 66). On August 24, 2011, Coffey filed an additional complaint. See Amended and Consolidated Complaint (Doc. 69)("Doc. 69 Amended and Consolidated Complaint"). Coffey never sought leave of court to file the Doc. 69 Amended and Consolidated Complaint.

On August 28, 2011, the Defendants filed their Motion to Strike. The Defendants seek to have the Court strike the Doc. 69 Amended and Consolidated Complaint, because Coffey filed it without leave of Court, after the completion of discovery, and after the Defendants filed their dispositive motions. See Motion to Strike at 1-2. The Defendants note that they did not oppose Coffey filing her Second Amended and Consolidated Complaint, even though she filed it one day late, and filed their dispositive motions based on that Second Amended and Consolidated Complaint. See Motion to Strike at 2. The Defendants then point out that, following their filing of dispositive motions, Coffey filed her Doc. 69 Amended and Consolidated Complaint, which includes facts and a legal claim not previously alleged in the prior versions of her pleadings. See Motion to Strike at 2-3. Coffey responds that she should receive leave to file this Doc. 69 Amended and Consolidated

Complaint, as she needs to file a consolidated complaint in this case.  See Plaintiffs' Opposition to Defendant McKinley County's Motion to Dismiss and/or Strike Plaintiffs' Amended and Consolidated Complaint at 2-3, filed September 13, 2011 (Doc. 82)("Response to Motion to Strike").  She alleges that the Defendants already knew of the new facts in the Doc. 69 Consolidated and Amended Complaint, because the Defendants produced those facts during the discovery process. See Response to Motion to Strike at 3-7.  The Defendants filed a reply to this response on August 22, 2011.  See Defendants McKinley County and United States of America Reply Memorandum for Their Motion to Dismiss and/or Strike Plaintiff's "Amended and Consolidated Complaint" and for Such Other Relief as is Appropriate (Doc. 90)("Reply on Motion to Strike").  The Defendants contend that Coffey must show good cause for the amendment.  See Reply on Motion to Strike at 3.

On September 7, 2011, Coffey filed her Motion seeking leave to amend her First Amended and Consolidated Complaint.  Coffey asks the Court for leave to file an amended and consolidated complaint.  See Motion to Amend at 2.  Coffey has attached to her Motion a proposed amended and consolidated complaint.  See Amended and Consolidated Complaint, filed September 7, 2011 (Doc. 79-1)("Third Amended and Consolidated Complaint").  She argues that federal courts liberally allow a plaintiff to amend his or her pleadings.  See Motion to Amend at 2.  She contends that the Court should grant leave to amend for the following reasons: (i) on August 22, 2011, the two cases she has filed were consolidated; (ii) her attached Amended and Consolidated Complaint contains additional factual allegations ascertained during discovery; and (iii) the Attached Amended and Consolidated Complaint consolidates her Original Complaint against the United States and her amended complaint against McKinley County.  See Motion to Amend at 2.  Coffey also seeks leave to file a different version of her opposition to the Motion for Summary Judgment, based on her inadvertent

inclusion of more pages than allowed under the applicable local rule.  See Motion to Amend at 3-4. Furthermore, Coffey seeks leave to file thirty-six additional pages of exhibits in excess of the number of pages allowed by local rule, fifty.  See Motion to Amend at 5-6.  She makes this third request based on "the complexity of proof necessary to show deliberate indifference by McKinley County."  Motion to Amend at 5.

On September 20, 2011, the United States filed its Defendant United States of America's Response to Plaintiffs' Motion for Leave to File Amended and Consolidated Complaint.  See Doc. 87 ("United States' Response to Motion to Amend").  The United States opposes the Motion to Amend.  The United States argues that Coffey has already had sufficient opportunity to amend her pleadings.  See United States' Response to Motion to Amend at 2-3.  The United States argues the case is too far along to permit additional amendments.  See United States' Response to Motion to Amend at 3.  The United States contends that allowing Coffey to add a wrongful death claim at this time, a claim which Coffey "abandoned eight months ago," would unnecessarily delay the case. United States' Response to Motion to Amend at 3.  The United States notes that it would be necessary for it to file an additional summary judgment motion if the Court grants leave to amend. See United States' Response to Motion to Amend at 3-4.  The United States points out that the Third Amended and Consolidated Complaint contains additional allegations not included in the Original Complaint, including a medical negligence claim.  See United States' Response to Motion to Amend at 9.  The United States also contends that Coffey has misrepresented the purpose for which she seeks to file this newly proposed complaint, as previous complaints indicate that Coffey has already consolidated her complaints.  See United States' Response to Motion to Amend at 9-10.  The United States asserts that it relied on Coffey's representations at a deposition that she was not asserting certain claims against the United States.  See United States' Response to Motion to Amend at 10-12.

The United States contends that Coffey's conduct created the current predicament she faces.  <u>See</u> United States' Response to Motion to Amend at 10-14.

On September 22, 2011, McKinley County filed its County Defendants' Response to Plaintiffs' Motion for Leave to File Amended and Consolidated Complaint and Opposition to Motion to Strike and Motion to File Amended Response to Motion for Summary Judgment and Request for Leave to File Additional Pages of Exhibits and Opposition to Motion to Strike.  <u>See</u> Doc. 92 ("County Defendants' Response to Motion to Amend").  McKinley County opposes the Motion to Amend.  McKinley County argues that the more restrictive standard for pleading amendments under rule 16 of the Federal Rules of Civil Procedure applies to the current situation. <u>See</u> County Defendants' Response to Motion to Amend at 2-3.  With respect to the request to file a separate response to McKinley County's Motion for Summary Judgment, McKinley County notes that the new response does more than correct the violations of the local rules.  <u>See</u> County Defendants' Response to Motion to Amend at 3.  McKinley County points out that Coffey has made numerous additions of citations to the record and has also included additional text regarding factual allegations.  <u>See</u> County Defendants' Response to Motion to Amend at 3.  With respect to the request to exceed the page limits for additional exhibits, McKinley County did "not object to any of the exhibits which are actually cited to in the Plaintiff's version of the facts, or here dispute with Defendant's Facts."  County Defendants' Response to Motion to Amend at 3.  McKinley County objected to "the last 6 pages of the 87 . . . not cited anywhere in the Facts."  County Defendants' Response to Motion to Amend at 3.

On September 27, 2011, Coffey filed her reply to the United States' Response to Motion to Amend.  <u>See</u> Reply to the Defendant United States' Response to Plaintiff's Motion for Leave to File Amended and Consolidated Complaint (Document #87) (Doc. 99)("Reply to United States'

Response to Motion to Amend"). Coffey contends that the United States knew that Coffey did not intend to abandon her wrongful death/negligence claim. See Reply to United States' Response to Motion to Amend at 2. Additionally, she contends that the United States has participated in discovery regarding the wrongful death/negligence claim during the relevant time period that followed this claim not appearing in her pleadings. See Reply to United States' Response to Motion to Amend at 2-4. She points to various questions in the Deposition of Dr. Joseph Paris indicating that the United States has engaged in discovery on this claim. See Reply to United States' Response to Motion to Amend at 3. She contends that these errors in omitting this claim from her pleadings resulted from inadvertence. See Reply to United States' Response to Motion to Amend at 3-4.

On September 29, 2011, Coffey filed her reply to the County Defendants' Response to Motion to Amend. See Reply to the Defendant McKinley County's Response to Plaintiff's Motion for Leave to File Amended and Consolidated Complaint (Doc. 103)("Reply to County Defendants' Response to Motion to Amend"). Coffey notes that many of the provisions she seeks to add in the Third Amended and Consolidated Complaint appeared in her prior pleadings and thus do not result in any surprise to the Defendants. See Reply to County Defendants' Response to Motion to Amend at 2-3. Coffey also argues that she can demonstrate good cause for the amendment. See Reply to County Defendants' Response to Motion to Amend at 4-5.

The Court held a hearing on September 30, 2011. At the hearing, the United States recounted the procedural history of the case. See Transcript of Hearing at 2:25-7:3, 8:17-9:18 (taken September 30, 2011)(Mitchell)("Tr.").[3] The United States recounted how it relied on Coffey's representations during a deposition that she was no longer asserting a wrongful death claim. See

---

[3]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

-8-

Tr. at 7:4-8:16 (Mitchell).  The United States pointed out that there was no medical negligence claim asserted in the Original Complaint against the Gallup Indian Medical Center.  See Tr. at 13:21-14:2, 15:19-24 (Court, Mitchell).  The United States further asserted that Coffey had adequate time to obtain Andrew Crutcher's medical records before filing her initial administrative claim as well as before she tried to assert the medical negligence claim in this case.  See Tr. at 17:9-14 (Mitchell). The United States argued that Coffey's contention that the previous amended and consolidated complaints did not contain her claims and allegations against the United States is weak.  See Tr. at 17:16-19 (Mitchell).  The United States noted that Coffey abandoned her wrongful death claim by omitting it from her later amended pleadings.  See Tr. at 17:19-23 (Mitchell).  The United States contended that to allow amendment to assert a medical negligence claim would allow Coffey to assert a new theory in the case and require additional briefing by the parties on the newly raised issues.  See Tr. at 17:24-18:12 (Mitchell).  The United States pointed out that Coffey had dropped her wrongful death claim against the United States based on her filing of the First Amended and Consolidated Complaint filed on January 24, 2011.  See Tr. at 18:22-24 (Mitchell).  The United States contended that it relied upon her omission of this claim from the First Amended and Consolidated Complaint.  See Tr. at 18:25-19:11 (Mitchell).

Coffey contended that omitting the wrongful death claim was an unintentional mistake.  See Tr. at 20:12-18 (Hearne).  She noted that the cases had been consolidated for all purposes only very recently.  See Tr. at 20:24-21:3 (Hearne).  Coffey clarified that, before January 24, 2011, she asserted only a wrongful death/negligence claim against the United States for their failure to screen Crutcher when it picked him up and transported him.  See Tr. at 22:11-22:5 (Court, Hearne).  She agreed that she was not trying to bring a medical malpractice claim at the beginning of the case and that this claim is a new claim.  See Tr. at 22:6-9, 23:12-22 (Hearne, Court).  Coffey agreed that

federal law does not permit her to bring constitutional claims against the United States.  See Tr. at 25:6-9 (Court, Hearne).  Coffey stated that, during the deposition to which the United States referred, she believed she was still pursuing a negligence claim and that it did not occur to her that this claim was not in her pleadings.  See Tr. at 25:25-26:17 (Court, Hearne).

The Court noted that, based on the discovery in the case, it looked as if the case had been proceeding as if everyone believed the wrongful death/negligence claim was still in the case.  See Tr. at 27:14-17.  The Court noted that it was concerned, however, about allowing in a medical negligence claim against the federal medical facility at this late date.  See Tr. at 27:14-20 (Court).  Coffey stated that she could not have discovered the medical negligence claim until recently based on some of the discovery she has received.  See Tr. at 27:21-28:16 (Hearne).  She agreed that there could be a successful argument that this medical negligence claim would be time-barred.  See Tr. at 28:17-23 (Court, Hearne).  Coffey also agreed that she was comfortable with not allowing in the medical negligence claim against the federal medical facility if the Court allowed amendment regarding her previously asserted claims.  See Tr. at 28:24-29:4 (Court, Hearne).  The United States recognized that its discovery would have been the same if the wrongful death/negligence claim had remained in the case.  See Tr. at 33:2-18 (Mitchell, Court).  The United States recognized that Coffey omitting some of these claims from her later pleadings may have been a mistake, but contended that many of the cases decided on these issues arose from mistakes.  See Tr. at 35:5-12 (Mitchell).  The Court suggested allowing back in the wrongful death/negligence claim but not the medical malpractice claims.  See Tr. at 35:13-24 (Court).  The United States did not agree to that suggestion.  See Tr. at 35:25-36:1.  The United States noted that the more recent allegations regarding the wrongful death/negligence claim are broader than what appeared in the Original Complaint.  See Tr. at 37:12-19 (Mitchell).  Coffey agreed that she would only seek to litigate the

negligent screening, negligent transfer, and negligent hand off[4] theories against the United States. See Tr. at 37:20-25 (Court, Hearne). The United States stated that it would need additional discovery regarding the hand off, as it only acquired information regarding those facts recently after the close of discovery. See Tr. at 38:5-15 (Mitchell, Court). McKinley County pointed out that the United States would not likely have an expert on the issue of the appropriate standard of care regarding the negligent screening allegations. See Tr. at 39:6-40:5 (Martinez, Court). The United States contended that this issue of allowing the amendment may be moot, as the Bureau of Indian Affairs regulations do not impose a duty to screen individuals. See Tr. at 40:6-41:3 (Mitchell). The United States also noted that it does not have an expert on this issue of negligent screening and that it would want one if it could find one. See Tr. at 41:3-6 (Mitchell, Court). The United States reiterated that permitting amendment to add in the negligence claim would be futile, as there is no evidence that the Bureau of Indian Affairs had any legal duty to screen Crutcher when they picked him up or after they turned him over to McKinley County, and also that they had no obligation to supervise McKinley County, as McKinley County was an independent contractor. See Tr. at 60:24-64:1 (Mitchell). Coffey contended it was premature not to allow her to litigate the wrongful death/negligence claim. See Tr. at 64:18-11 (Hearne).

With respect to the Motion to Strike, McKinley County noted that there was a complaint filed without the Court's permission on August 24, 2011. See Tr. at 56:1-7 (Martinez). Consequently, the Defendants request that the Court strike this Doc. 69 Amended and Consolidated Complaint. See Tr. at 56:1-7 (Martinez). The United States reiterated that Coffey filed this pleading without the Court's leave. See Tr. at 56:10-14 (Mitchell). The Court stated that it was inclined to

---

[4]This theory involves the United States allegedly negligently handing off Crutcher to another facility.

grant the Motion to Strike and hear the Motion to Amend.  Coffey agreed that the Court could grant the Motion to Strike and instead consider the Motion to Amend.  <u>See</u> Tr. at 58:10-14 (Court, Hearne).

<b><u>LAW REGARDING AMENDMENT OF PLEADINGS</u></b>

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  <u>See</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); <u>Youell v. FNU Russell</u>, No. 04-1396, 2007 WL 709041, at *1-2 (D.N.M. Feb. 14, 2007)(Browning, J.); <u>Burleson v. ENMR-Plateau Tele. Coop.</u>, No. 05-0073, 2005 WL 3664299, at *1-2 (D.N.M. Sept. 23, 2005)(Browning, J.).  The Supreme Court of the United States has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  <u>Fomen v. Davis</u>, 371 U.S. 178, 182 (1962).  Furthermore, the United States Court of Appeals for the Tenth Circuit has held that district courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim.  <u>See</u> <u>Curley v. Perry</u>, 246 F.3d 1278, 1284 (10th Cir. 2001).  <u>See also</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a), however, where the proposed "amendment would be futile." <u>Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv.</u>, 175 F.3d 848, 859 (10th Cir. 1999).  <u>See</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. at 579-80.  An amendment is "futile" if the pleading "as amended, would be subject to dismissal." <u>In re Thornburg</u>

-12-

Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Comm'ns Network, Inc. v. Turner Network

Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)).  A court may also deny leave to amend

"upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive,

[or] failure to cure deficiencies by amendments previously allowed."  In re Thornburg Mortg., Inc.

Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66 (10th Cir.

1993)).  The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to deny
> leave to amend, see Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1462
> (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d
> 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, 820 F.2d
> 1127, 1133 (10th Cir. 1987), especially when the party filing the motion has no
> adequate explanation for the delay, Woolsey, 934 F.2d at 1462.  Furthermore,
> "[w]here the party seeking amendment knows or should have known of the facts
> upon which the proposed amendment is based but fails to include them in the
> original complaint, the motion to amend is subject to denial."  Las Vegas Ice, 893
> F.2d at 1185.

Frank v. U.S. W., Inc., 3 F.3d at 1365-66.  "The . . . Tenth Circuit has emphasized that '[t]he

purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided

on its merits rather than on procedural niceties.'"  B.T. ex rel. G.T. v. Santa Fe Pub. Schs., No.

05-1165, 2007 WL 1306814, at *2 (D.N.M. Mar. 12, 2007)(Browning, J.)(quoting Minter v. Prime

Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)).

The Tenth Circuit has recognized that there is an open issue as to rule 16's application to

pleadings amendments once the time for seeking leave for pleading amendments has passed under

a scheduling order.  See Bylin v. Billings, 568 F.3d 1224, 1232 n.10 (10th Cir. 2009)("Because we

decline to consider the Bylins' Rule 16 argument, we leave for another day the question of whether

this circuit should apply Rule 16 when a party seeks to amend a pleading after a court-imposed

deadline.").  "Rule 16 only allows such amendments for 'good cause,' an arguably more stringent

standard than the standards for amending a pleading under Rule 15." Bylin v. Billings, 568 F.3d at 1230 (quoting Fed. R. Civ. P. 16(b)(4)).  Rule 16(b)(4) states: "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The rule "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment."  Advanced Optics Elecs., Inc. v. Robins, 769 F.Supp.2d 1285, 1313 (D.N.M. 2010)(Browning, J .).  "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  Advanced Optics Elecs., Inc. v. Robins, 769 F.Supp.2d at 1313.  See Gerald v. Locksley, No. 10-0721, 2011 WL 3510845, at *13-14 (D.N.M. Aug. 1, 2011)(Browning, J.)(same).

The Tenth Circuit has interpreted rule 16 as imposing a "good cause" standard to untimely motions to amend when a scheduling order governs the case.  See Minter v. Prime Equip. Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).  "This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  Minter v. Prime Equip. Co., 451 F.3d at 1205 n.4.  The Tenth Circuit has noted that there is a "'rough similarity' between the 'undue delay' standard of Rule 15 and the 'good cause' standard of Rule 16."  Bylin v. Billings, 568 F.3d at 1231.  Thus, the Tenth Circuit has indicated that the application of the rule 16 standard will often lead to the same outcome as applying the rule 15 standard.  See Bylin v. Billings, 568 F.3d at 1231-32.

This Court has previously stated that its rule 16(b) good-cause inquiry focuses on the diligence of the party seeking amend the scheduling.  See Walker v. THI of N.M. at Hobbs Ctr., 262 F.R.D. 599, 602-03 (D.N.M. 2009)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Intern., Inc., No. 08-1101, 2009 WL 3672505, at *2-3 (D.N.M. Sept. 29, 2009)(Browning, J.); Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., Nos. 02-1146 and 03-1185, 2007 WL 2296955, at *3

(D.N.M. June 5, 2007)(Browning, J.).

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997)(citations omitted), aff'd on other grounds, 129 F.3d 116 (4th Cir. 1997). See Denmon v. Runyon, 151 F.R.D. 404, 407 (D. Kan. 1993)(affirming an order denying the plaintiff's motion to amend after the deadline the scheduling order established had passed and stating that, "[t]o establish 'good cause,' the party seeking to extend the deadline must establish that the scheduling order's deadline could not have been met with diligence"). Cf. SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1518-19 (10th Cir. 1990)(affirming, under rule 16(b), denial of a motion to amend an answer to include a compulsory counterclaim filed three months after the scheduling order deadline).

In Broitman v. Kirkland (In re Kirkland), 86 F.3d 172 (10th Cir. 1996), the Tenth Circuit dealt with the definition of "good cause" in the context of rule 4(j). The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

86 F.3d at 175 (emphasis omitted)(internal quotation marks omitted)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)). The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a

greater showing than 'excusable neglect.'" <u>Broitman v. Kirkland (In re Kirkland)</u>, 86 F.3d at 175.

Other courts within the Tenth Circuit have held that "the 'good cause' standard primarily considers the diligence of the party . . . [.]  The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." <u>Pulsecard, Inc. v. Discover Card Servs. Inc.</u>, 168 F.R.D. 295, 301 (D. Kan. 1996)(internal quotation marks omitted)(omission in original).  In the United States District Court for the District of Utah, the Honorable Dale A. Kimball, United States District Judge, found "good cause" existed to amend the court's scheduling order when the court decided to permit the plaintiff's counsel to withdraw as counsel.  <u>See</u> <u>Kee v. Fifth Third Bank</u>, No. 06-00602, 2008 WL 183384, at *1 (D. Utah Jan. 17, 2008).  Judge Kane reasoned: "[I]n light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order." <u>Kee v. Fifth Third Bank</u>, 2008 WL 183384, at *1.

## ANALYSIS

The Court will grant the Motion to Strike, as Coffey does not contest the Court granting this motion.  The Court will grant in part and deny in part the Motion to Amend.  The Court will allow Coffey to file her Third Amended and Consolidated Complaint, but will not allow her to include in the Third Amended and Consolidated Complaint any allegations regarding medical malpractice claims or theories against any federal facilities.  Coffey can include allegations regarding her wrongful death/negligence claim, as she had asserted that claim in prior pleadings.  She may assert, however, only negligent screening, negligent transfer, and negligent hand off theories against the United States under this wrongful death/negligence claim.  If the United States requires additional discovery to address the wrongful death/negligence claim it should consult with Coffey to resolve

-16-

that issue.  If the parties are unable to come to an agreement on discovery, the United States may file a request listing the discovery it requires on the claim and related defenses, specifying the purpose for which it seeks the discovery.  If the United States requires an additional expert to address this claim, it may designate an expert to testify regarding this claim.  The United States must otherwise comply with the applicable rules regarding expert discovery contained in rule 26 of the Federal Rules of Civil Procedure.  The Court will allow Coffey to file an amended response to McKinley County's Motion for Summary Judgment.  The Court will allow Coffey to exceed the limit on page numbers for exhibits attached to her response to McKinley County's Motion for Summary Judgment.

## I.  THE COURT WILL GRANT THE MOTION TO STRIKE, BECAUSE COFFEY DOES NOT OPPOSE THE MOTION.

At the September 30, 2011 hearing, Coffey agreed that the Court could grant the Motion to Strike and instead consider the Motion to Amend.  See Tr. at 58:10-14 (Court, Hearne).  Because the Court will grant the Motion to Amend in part, and because Coffey did not oppose the Motion to Strike at the hearing, the Court will grant the Motion to Strike.  Thus, the Court will strike the Doc. 69 Amended and Consolidated Complaint.

## II.  THE COURT WILL ALLOW COFFEY TO AMEND HER PLEADINGS, TO AMEND HER RESPONSE TO MCKINLEY COUNTY'S MOTION FOR SUMMARY JUDGMENT, AND TO EXCEED THE PAGE LIMITS FOR HER EXHIBITS ATTACHED TO HER RESPONSE TO MCKINLEY COUNTY'S MOTION FOR SUMMARY JUDGMENT, BUT WILL NOT ALLOW HER TO ASSERT A MEDICAL MALPRACTICE CLAIM OR THEORY IN HER PLEADINGS.

The Court will grant in part and deny in part the Motion to Amend.  The Court will allow Coffey to file her Third Amended and Consolidated Complaint, but will not allow her to include in the Third Amended and Consolidated Complaint any allegations regarding any medical malpractice claim or theory against any federal facilities.  Coffey can include allegations regarding her wrongful

death/negligence claim, as she had asserted that claim in prior pleadings.  She may assert, however, only the negligent screening, negligent transfer, and negligent hand off theories against the United States under this wrongful death/negligence claim.  If the United States requires additional discovery to address the wrongful death/negligence claim it should consult with Coffey to resolve that issue. If the parties are unable to come to an agreement on discovery, the United States may file a request listing the discovery it requires on the claim and related defenses, specifying the purpose for which it seeks the discovery.  If the United States requires an additional expert to address this claim, it may designate an expert to testify regarding this claim.  The United States must otherwise comply with the applicable rules regarding expert discovery contained in rule 26 of the Federal Rules of Civil Procedure.  The Court will allow Coffey to file her proposed response to McKinley County's Motion for Summary Judgment to conform her response to the applicable local rules.  The Court will allow Coffey to exceed the limit on page numbers for exhibits attached to her response to McKinley County's Motion for Summary Judgment.

> **A.    THE COURT WILL ALLOW COFFEY TO AMEND HER PLEADINGS, BUT WILL NOT ALLOW HER TO ASSERT A MEDICAL MALPRACTICE CLAIM OR THEORY.**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Under rule 15(a), a court should freely grant leave to amend a pleading where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80; Youell v. FNU Russell, 2007 WL 709041, at *1-2; Burleson v. ENMR-Plateau Tele. Coop., 2005 WL 3664299, at *1-2.  The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Fomen v. Davis, 371 U.S. at 182.  Furthermore, the Tenth Circuit has held that district courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim.  See Curley v. Perry, 246 F.3d at 1284.  See also In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

The Tenth Circuit has recognized that there is an open issue as to rule 16's application to pleadings amendments once the time for seeking leave for pleading amendments has passed under a scheduling order.  See Bylin v. Billings, 568 F.3d at 1232 n.10.  "Rule 16 only allows such amendments for 'good cause,' an arguably more stringent standard than the standards for amending a pleading under Rule 15."  Bylin v. Billings, 568 F.3d at 1230 (quoting Fed. R. Civ. P. 16(b)(4)). Rule 16(b)(4) states: "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The rule "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment."  Advanced Optics Elecs., Inc. v. Robins, 769 F.Supp.2d at 1313.  "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  Advanced Optics Elecs., Inc. v. Robins, 769 F.Supp.2d at 1313.

The Tenth Circuit has interpreted rule 16 as imposing a "good cause" standard to untimely motions to amend when a scheduling order governs the case.  See Minter v. Prime Equip. Co., 451 F.3d at 1205 n.4.  "This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  Minter v. Prime Equip. Co., 451 F.3d at 1205 n.4.  The Tenth Circuit has noted that there is a "'rough similarity' between the 'undue delay' standard of Rule 15 and the 'good cause' standard of Rule 16."  Bylin v. Billings, 568 F.3d at 1231.  Thus, the Tenth Circuit has indicated that the application

of the rule 16 standard will often lead to the same outcome as applying the rule 15 standard. See Bylin v. Billings, 568 F.3d at 1231-32.

In Broitman v. Kirkland (In re Kirkland), the Tenth Circuit dealt with the definition of "good cause" in the context of rule 4(j).  The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

86 F.3d at 175 (emphasis omitted)(internal quotation marks omitted).  The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"  Broitman v. Kirkland (In re Kirkland), 86 F.3d at 175.  Other courts within the Tenth Circuit have held that "the 'good cause' standard primarily considers the diligence of the party . . . [.]  The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. at 301.

The omission of the wrongful death/negligence claim, asserted against the United States, from the First Amended and Consolidated Complaint appears to have been the result of inadvertence as opposed to "undue delay, bad faith or dilatory motive," or "repeated failure to cure deficiencies by amendments previously allowed."  Fomen v. Davis, 371 U.S. at 182.  Treva Hearne, counsel for Diana Coffey, attached an affidavit to her Motion to Amend.  See Affidavit of Treva J. Hearne (executed September 6, 2011), filed September 7, 2011 (Doc. 79-2).  In this affidavit, she stated that her law firm employs only two attorneys.  See Hearne Aff. ¶ 3, at 1.  She also stated that another one

-20-

of her firm's cases "was converted to Multi District Litigation in 2010 " and that her firm was appointed as lead counsel for these proceedings.  Hearne Aff. ¶ 11, at 2.  She also represented that another large case, involving over 200 plaintiffs and thirteen defendants, "was assigned to federal mediation" in 2011, "which required multiple day long sessions."  Hearne Aff. ¶ 12, at 2-3.  She also stated that, in March of 2011, her "law partner's mother died which required him to deal with his grief as well as a fairly large estate to be resolved with his siblings."  Hearne Aff. ¶ 13, at 3.  Ms. Hearne also represented that, in April of 2011, her "law partner lost his 19 year old daughter to the effects of bulimia and anorexia, a battle which she had been involved with for months and seemed to have won, but suffered a heart attack and died unexpectedly."  Hearne Aff. ¶ 14, at 3.  Ms. Hearne additionally states that, based on these events, she was "required to take over the entire practice in the multi district litigation, the wrongful death cases," as well as other cases, including "the criminal docket that [her] law partner always handled."  Hearne Aff. ¶ 15, at 3.  She noted that she took over these cases even though she "was attempting to wind down [her] practice and retire next year at age 65."  Hearne Aff. ¶ 15, at 3.  She also stated that her firm "hired an associate as soon as [it] could interview and the associate has passed four bars but been unable to obtain a license because of delinquent parking tickets and a six month hiatus after those were finally paid in full as a requirement of the Character and Fitness Committee in Michigan where he took his first bar exam."  Hearne Aff. ¶ 16, at 3.  She also stated that the local counsel in this case "has over the past year" had to deal with "a serious medical problem" and has "not [been] able to assist in this case."  Hearne Aff. ¶ 17, at 3.  Ms. Hearne noted that she has had to appear in courts in Arizona and California to litigate some of her firm's cases, and has taken depositions for some of her firm's cases in Atlanta, Georgia, Baltimore, Maryland, and New Mexico.  See Hearne Aff. ¶ 18, at 4.  She noted that her "staff has tried to make certain that we have answered all pleadings correctly, but we have made a

few errors." Hearne Aff. ¶ 19, at 4.

The United States points to testimony during Dr. Paris' deposition which it contends indicates that Ms. Hearne did not clarify any mistake regarding a negligence claim during the deposition.  See United States' Response to Motion to Amend at 10-13.  Specifically, the United States points to various questions where Ms. Hearne agreed that the First Amended and Consolidated Complaint was the proper pleading on which to rely for the purposes of asking questions.  See United States' Response to Motion to Amend at 10-12.  Additionally, the United States contends that Ms. Hearne never mentioned any negligence claims during questions between counsel regarding which constitutional violations Coffey was asserting against the United States. See United States' Response to Motion to Amend at 10-12.  Coffey counters that, contrary to the United States' assertions, the questioning at Dr. Paris' deposition indicated that the United States was taking testimony regarding the negligence claims.  See Reply to United States' Response to Motion to Amend at 3 (citing Deposition of Dr. Joseph E. Paris (taken July 19, 2011), filed September 27, 2011 (Doc 99-4)("Paris Depo.")).

At the hearing on September 30, 2011, the Court noted that, based on the discovery in the case, it looked as if the case had been proceeding as if everyone believed the wrongful death/negligence claim was still in the case.  See Tr. at 27:14-17 (Court).  The Court noted that it was concerned, however, about allowing in a medical negligence claim against the federal medical facility at this late date.  See Tr. at 27:14-20 (Court).  Coffey agreed that she was comfortable with not allowing in the medical negligence claim against the federal medical facility if the Court allowed amendment regarding her previously asserted claims.  See Tr. at 28:24-29:4 (Court, Hearne).  The United States conceded that its discovery would have been the same if the wrongful death/negligence claim had remained in the case.  See Tr. at 33:2-18 (Mitchell, Court).  The United

States recognized that Coffey omitting some of these claims from her later pleadings may have been a mistake, but contended that many of the cases decided on these issues arose from mistakes.  See Tr. at 35:5-12 (Mitchell).  The Court suggested allowing back in the wrongful death/negligence claim but not the medical malpractice claims.  See Tr. at 35:13-24 (Court).  The United States did not agree to that suggestion.  See Tr. at 35:25-36:1.  The United States noted that the more recent allegations regarding the wrongful death/negligence claim are broader than what appeared in the Original Complaint.  See Tr. at 37:12-19 (Mitchell).  Coffey agreed that she would seek to litigate only the negligent screening, negligent transfer, and negligent hand off theories against the United States.  See Tr. at 37:20-25 (Court, Hearne).  The United States stated that it would need additional discovery regarding the hand off theory, as it only acquired information regarding those facts recently after the close of discovery.  See Tr. at 38:5-15 (Mitchell, Court).  The United States also noted that it does not have an expert on the issue of negligent screening and that it would want one if it could find one.  See Tr. at 41:3-6 (Mitchell, Court).  The United States reiterated that permitting amendment to add in the negligence claim would be futile, as there is no evidence that the Bureau of Indian Affairs had any legal duty to screen Crutcher when they picked him up or after they turned him over to McKinley County, and also that they had no obligation to supervise McKinley County, as McKinley County was an independent contractor.  See Tr. at 60:24-64:1 (Mitchell).  Coffey contended it was premature not to allow her to litigate the wrongful death/negligence claim.  See Tr. at 64:18-11 (Hearne).

The testimony at Dr. Paris's deposition indicates that there were some questions that would have implicated negligence claims.  For instance, the United States asked Dr. Paris about his understanding of Crutcher's heart conditions.  See Paris Depo. at 15:19-21.  The United States asked questions about what Crutcher said on arrival at the detention center regarding his heart condition

and medications.  See Paris. Depo. at 30:2-5.  The United States asked whether Crutcher experienced

any shortness of breath between certain time periods.  See Paris Depo at 30:16-19.  The United

States asked about swelling in Crutcher's lower extremities.  See Paris Depo. at 31:18-20.  There

were also questions about whether Crutcher became anorexic, whether he exercised while he was

in custody, and when his "last ejection fraction was taken."[5]  Paris Depo. at 32:2-5, 32:8-10, 32:19-

20.  The United States also questioned Dr. Paris about an infection on Crutcher's left hamstring.

 See Paris Depo. at 33:3-5.  While there may have been some confusion at the deposition about

which constitutional claims Coffey was asserting against the United States, this questioning

indicates that the United States was still proceeding as if negligence claims would potentially still

be at issue in the case.

        The Court recognizes that it should freely grant leave to amend under rule 15.  Additionally,

the Tenth Circuit has not expressly decided whether rule 16 applies to motions seeking leave to

amend a complaint.  It has also emphasized that there is a rough similarity between the undue delay

standard under rule 15 and the good cause standard under rule 16.  Based on Ms. Hearne's affidavit

and the Court's familiarity with the pleadings in this case, the Court concludes that the omission of

the wrongful death/negligence claim against the United States was inadvertent.  Coffey did not act

with undue delay in seeking leave to amend with the Court.  It is hard to call her delay undue if she

---

        [5]An ejection fraction is the fraction "of the blood contained in the ventricle at the end of [a]
diastole that is expelled during contraction, i.e., the stroke volume divided by end-diastolic volume."
Stedman's Medical Dictionary 769 (28th ed. 2006).  Additionally, "with the onset of congestive
heart failure, the ejection" fraction "decreases." Id.  A fraction is the quotient of two quantities.  See
id. at 768.  A ventricle is "[a] normal cavity, as of the brain or heat." Id. at 2114.  A diastole is the
"[n]ormal postsystolic dilation of the heart cavities, during which they fill with blood." Id. at 534.
A systole is a "[c]ontraction of the heart, especially of the ventricles, by which the blood is driven
through the aorta and the pulmonary artery to traverse the systemic and pulmonary circulations."
Id. at 1929.

did not know that she needed to amend her pleadings.

Additionally, good cause exists under rule 16 based on the circumstances set out in Ms. Hearne's affidavit, the United States' concession that it would not have likely conducted any different discovery on this claim, and the appearance to the Court that the parties have proceeded in this matter as if this claim was still in the case.  The circumstances Ms. Hearne sets out in her affidavit indicate that she has "provide[d] an adequate explanation for any delay" to justify the conclusion that she "has been diligent in attempting to meet the deadlines" in this case.  Minter v. Prime Equip. Co., 451 F.3d at 1205 n.4.  She set out a variety of difficulties facing her law firm, including significant problems within her partner's family, the volume and complexity of cases which they currently handle, that her local counsel has not been of much assistance, and that her firm has been unsuccessful in having its newly hired associate assist in handling these cases because of delays in obtaining his bar license.  Additionally, based on the apparent confusion whether the negligence claims were still in the case, as Dr. Paris' deposition revealed, Coffey has made a showing of "good faith . . . and some reasonable basis for noncompliance within the time specified." Broitman v. Kirkland (In re Kirkland), 86 F.3d at 175.  Rule 16 requires the moving party's attorney to be diligent and mindful of deadlines, but it does not require the attorney to be perfect.  Mistakes will be made.  And it is not always just to punish the client for the imperfections of the attorney. Here, Ms. Hearne thought something was in her pleadings that was not for some reason -- such as a word processing error or miscommunication.  Specifically, she thought she still had in her pleadings the negligence/wrongful death claim that appeared in her Original Complaint.  This claim did not appear in the First Amended and Consolidated Complaint.  Given that attorneys sometimes make mistakes, the facts do not indicate that Ms. Hearne had reason to know that she was in trouble, that she needed to amend her pleadings, or that she would miss the scheduling order's deadline.

Accordingly, while Ms. Hearne committed an error, the Court cannot say she did not act diligently when she missed the deadline for seeking amendment of her pleadings.  Moreover, her conduct at the deposition does not indicate she acted in bad faith, even though there may have been some confusion about which claims she was pursuing against the United States.  Additionally, the United States asked many of questions that would have related to Coffey's negligence claims, which would not have informed her that these claims were not in her pleadings.  Pursuant to Coffey's agreement at the hearing, she may litigate only the negligent screening, negligent transfer, and negligent hand off theories against the United States under her negligence claim.  See Tr. at 37:20-25 (Court, Hearne).

While the United States will suffer some prejudice in having to defend against this claim, the Court can prevent or at least mitigate to an acceptable level any unfair prejudice by allowing the United States to file dispositive motions to challenge this claim and to seek additional discovery, if necessary, to defend against this claim.  If the United States requires additional discovery to address the wrongful death/negligence claim it should consult with Coffey to resolve that issue.  To facilitate additional discovery, the Court advises Coffey that it will be inclined to be liberal in allowing the United States to conduct additional discovery.  If the parties are unable to come to an agreement on discovery, the United States may file a request listing the discovery it requires on the claim and related defenses, specifying the purpose for which it seeks the discovery.  If the United States requires an additional expert to address this claim, it may designate an expert to testify regarding this claim.  The United States must otherwise comply with the applicable rules regarding expert discovery contained in rule 26 of the Federal Rules of Civil Procedure.

The United States argued at the hearing that allowing Coffey to add in this negligence/wrongful death claim against the United States would be futile, as there is no indication

that the United States would have to comply with the duties Coffey asserts they breached.  The United States, however, did not address this futility argument in its United States' Response to Motion to Amend.  It would be difficult for the Court to properly decide this futility issue without written briefing and without giving Coffey a full chance to respond.  She could not have fully responded to the futility issue at the hearing without some notice that the United States would argue the issue.  It would not be apparent to Coffey from the United States' Response to Motion to Amend that it would raise this argument at the hearing.  Thus, the Court will not deny leave to amend on these grounds, because it cannot conclude at this time that the amendments would be futile.

The Court will, however, deny leave to amend regarding the portions of the Third Amended and Consolidated Complaint where Coffey seeks to assert a medical malpractice claim or theory against any federal facilities.  Coffey agreed at the hearing that the Court could deny leave to amend with respect to these medical malpractice claims if it granted her leave to amend on her negligence/wrongful death claim against the United States that appeared in her earlier pleadings. See Tr. at 28:24-29:4 (Court, Hearne).  Additionally, granting leave to amend on these claims would result in undue prejudice to the United States.  These claims did not appear in any prior pleadings. Discovery in this case has already concluded, and the United States has pointed out that it would require a great deal of additional discovery to adequately defend against these claims.  Furthermore, the United States has already begun filing dispositive motions against Coffey's claims.  Under both the more liberal rule 15 standard, undue delay, and rule 16's good cause standard, the Court concludes that adding in these medical malpractice claims at this time would cause undue prejudice to the United States.

**B.    THE COURT WILL ALLOW COFFEY TO FILE A DIFFERENT VERSION OF HER RESPONSE TO MCKINLEY COUNTY'S MOTION FOR SUMMARY JUDGMENT.**

Coffey also seeks leave to file a different version of her opposition to the Motion for Summary Judgment based on her inadvertent inclusion of more pages than allowed under the applicable local rule. <u>See</u> Motion to Amend at 3-4. McKinley County argues that the new response does more than correct the violations of the local rules. <u>See</u> County Defendants' Response to Motion to Amend at 3. McKinley County contends out that Coffey has made numerous additions of citations to the record and has also included additional text regarding factual allegations. <u>See</u> County Defendants' Response to Motion to Amend at 3.

Under  D.N.M.LR-Civ. 7.4(a), "[a] response must be served and filed within fourteen (14) calendar days after service of the motion."  D.N.M.LR-Civ. 7.4(a).  Additionally, D.N.M.LR-Civ. 7.5 provides: "A response brief must not exceed twenty-four (24) double-spaced pages." D.N.M.LR-Civ. 7.5.  Appellate courts review a district court's decision to grant or deny a motion to amend a response to a motion for abuse of discretion.  <u>See</u> <u>CF/SPC 1994 v. Jitner</u>, No. 98-56810, 2001 WL 470035, at *2 (9th Cir. May 3, 2001)(unpublished).  Courts are more inclined to grant a motion to amend a response if the party attaches affidavits that justify granting the motion.  <u>See</u> <u>Blevins v. O.H.C. Batteries & Car Sales, Inc.</u>, 855 F.2d 860, 1988 WL 90060, at *5 (9th Cir. Aug. 19, 1998).

Here, Coffey filed this motion to amend the summary judgment response on September 7, 2011.  <u>See</u> Doc. 79.  McKinley County filed its Motion for Summary Judgment on August 1, 2011. While McKinley County argues that the amended response contains additional factual allegations and citations to authority, McKinley County has not directed the Court to any portion of the amended response that contains this additional material.  The Court has compared the original

response and the amended response, and has not located any additional citations to authority.  See Plaintiffs' Amended Opposition to McKinley County's Motion for Summary Judgment, filed September 7, 2011 (Doc. 77)("Original Response in Opposition"); Plaintiffs' Opposition to McKinley County's Motion for Summary Judgment, filed August 19, 2011 (Doc. 84)("Amended Response in Opposition").  Additionally, McKinley County has the obligation to point out any factual discrepancies between the two responses rather than require the Court to locate these discrepancies.  Ms. Hearne has attached an affidavit explaining the circumstances why the Original Response in Opposition exceeded the page limit requirements, specifically that she confused the New Mexico local rules with California local rules and that she was traveling while preparing the response.  See Hearne Aff. ¶ 19, at 4.  As the Court has found no additional factual allegations or citations to authority in the Amended Response in Opposition, and because Coffey has sought to cure her violations of the applicable local rules on page limits of responses, the Court will grant the Motion to Amend and allow her to amend her Original Response in Opposition.

### C.   THE COURT WILL ALLOW COFFEY TO EXCEED THE PAGE LIMITS REGARDING THE EXHIBITS TO HER RESPONSE TO MCKINLEY COUNTY'S MOTION FOR SUMMARY JUDGMENT.

Coffey additionally seeks leave to file thirty-six additional pages of exhibits in excess of the number of pages allowed by local rule, fifty.  See Motion to Amend at 5-6; D.N.M.LR-Civ. 10.5 ("All exhibits to a motion, response or reply, including excerpts from a deposition, must not exceed a total of fifty (50) pages, unless all parties agree otherwise.").  She makes this third request based on "the complexity of proof necessary to show deliberate indifference by McKinley County." Motion to Amend at 5.  McKinley County does "not object to any of the exhibits which are actually cited to in the Plaintiff's version of the facts, or here dispute with Defendant's Facts."  County Defendants' Response to Motion to Amend at 3.  McKinley County objected to "the last 6 pages of

the 87 . . . not cited anywhere in the Facts." County Defendants' Response to Motion to Amend at 3.

Given the voluminous number of filings in this case, and given that the Court has already authorized Coffey to amend her Original Response in Opposition, striking only the last six pages of Coffey's exhibits to her Amended Response in Opposition would create more confusion. McKinley County has articulated no sound reason why it will suffer harm if the Court allows Coffey to include these last six pages of exhibits along with the rest of her exhibits. Thus, given that Coffey has made this request in an attempt to comply with the local rules and to reduce the number of exhibits attached to her response, the Court will grant her request to exceed the page limits for exhibits attached to her response required under the local rule.

**IT IS ORDERED** that the Defendants McKinley County and United States of America's Motion to Dismiss and/or Strike Plaintiff's "Amended and Consolidated Complaint" and for Such Other Relief as Is Appropriate, filed August 28, 2011 (Doc. 72), is granted. The Court will grant in part and deny in part the Plaintiff's Motion for Leave to File Amended and Consolidated Complaint and Motion to File Amended Response to Motion for Summary Judgment and Request for Leave to File Additional Pages of Exhibits, filed September 7, 2011 (Doc. 79). The Court will grant the Motion to Strike. The Court will grant in part and deny in part the Motion to Amend. The Court will allow Plaintiff Diana Coffey to file her Third Amended and Consolidated Complaint, but will not allow her to include in the Third Amended and Consolidated Complaint any medical malpractice claim or theory against any federal facilities. Coffey can include her wrongful death/negligence claim against the Defendant United States of America, but only for her theories regarding negligent screening, negligent transfer, and negligent hand off. If the United States requires additional discovery to address the wrongful death/negligence claim it should consult with

Coffey to resolve that issue.  If the parties are unable to come to an agreement on discovery, the United States may file a request listing the discovery it requires on the claim and related defenses, specifying the purpose for which it seeks the discovery.  To facilitate additional discovery, the Court advises Coffey that it will be inclined to be liberal in allowing the United States to conduct additional discovery.  If the United States requires an additional expert to address this claim, it may designate an expert to testify regarding those claims.  The United States must otherwise comply with the applicable rules regarding expert discovery contained in rule 26 of the Federal Rules of Civil Procedure.  The Court will allow Coffey leave to file an amended response to McKinley County's Motion for Summary Judgment.  The Court will allow Coffey to exceed the limit on page numbers for exhibits attached to her response to McKinley County's Motion for Summary Judgment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Scott E. Borg
Barber & Borg, LLC
Albuquerque, New Mexico

-- and--

Robert R. Hager
Treva J. Hearne
Hager & Hearne
Reno, Nevada

     *Attorneys for the Plaintiff*

Kenneth J. Gonzales
   United States Attorney
Jan Elizabeth Mitchell
Dori Ellen Richards
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for Defendant United States of America*

Jonlyn M. Martinez
Slease & Martinez, P.A.
Albuquerque, New Mexico

   *Attorneys for Defendant McKinley County*