IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIANA COFFEY, on her own behalf and on behalf
of the estate of ANDREW CRUTCHER, deceased,
and also, as next friend, on behalf of  her minor
grandchildren, JOANELLE CRUTCHER,
RACHELLE CRUTCHER, ALEX BENALLY,
ANDREW CRUTCHER, VICK CRUTCHER,
KITANA CRUTCHER, and DREW CRUTCHER,

   Plaintiffs,

vs.             No. CIV 08-0588 JB/LFG

UNITED STATES OF AMERICA,

   Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendant United States of America's Motion
in Limine to Preclude Testimony of Plaintiffs' Expert Witness Which Was Not Included in His
Initial Expert Report, filed May 10, 2012 (Doc. 151)("Motion in Limine"). The Court held a hearing
on May 23, 2012.  The primary issues are: (i) whether Plaintiff Diana Coffey untimely supplemented
Dr. Joseph E. Paris' Expert Report (dated December 24, 2010), filed February 14, 2011 (Doc. 50-1);
and (ii) whether the Court should permit her to discuss any matters that she did not timely
supplement in Dr. Joseph Paris' expert report.  The Court will deny the Motion in Limine.  The
Court concludes that Defendant United States of America has not established that Coffey's
supplementation of her expert report was untimely.  Furthermore, given that the disclosure occurred
approximately ten months before trial, and before the United States deposed Dr. Paris, or before
Coffey deposed the United States' expert, Dr. Neal Shadoff, the Court considers the prejudice and
surprise to the United States, if any, to be low.  Moreover, the United States could have cured any

prejudice.  Given that Coffey is asserting a theory against the United States that McKinley County Detention Center ("MCDC") was an improper facility at which to house Andrew Crutcher, and that the applicable factors weigh in favor of permitting testimony on this issue, the Court will permit Dr. Paris to testify on the matters in the amended expert report.  The Court will allow the United States' expert, Dr. Shadoff, to testify on the same matters.

## FACTUAL BACKGROUND

Many of the basic facts in this case are not disputed.  "In April 2006, Andrew Crutcher, a Native American, was tried in the Reno Sparks Indian Colony Tribal Court and convicted by a jury of discharging a firearm on the Reno Sparks Indian Colony in Nevada."  Memorandum Opinion and Order at 3, filed May 2, 2012 (Doc. 141)("May 2, 2012 MOO").  "In May 2006, Crutcher was sentenced to 365 days in jail for the weapons offense by the Reno Sparks Indian Colony Tribal Court and was committed into custody at an available detention facility, the Washoe County Jail, per a procurement contract with the Bureau of Indian Affairs ('BIA')."   May 2, 2012 MOO at 4.  "On October 7, 2006, BIA employees transported Crutcher and a number of other inmates from the Washoe County Jail."  May 2, 2012 MOO at 4.  "In Peach Springs, Arizona, Crutcher and some of the other inmates were transferred to the custody of officers from the McKinley County Detention Center ('MCDC') and taken to Gallup, New Mexico, for incarceration at the MCDC."  May 2, 2012 MOO at 4-5.  "Crutcher was incarcerated at the MCDC on October 8, 2006."  May 2, 2012 MOO at 5.  "The MCDC was a contract facility for detention pursuant to a contract between the BIA and MCDC."  May 2, 2012 MOO at 6.  "On February 8, 2007, while incarcerated at the MCDC, an officer at this facility observed that Crutcher was ill and that he needed to be taken to the medical unit."  May 2, 2012 MOO at 6.  "Crutcher was transported to the Gallup Indian Medical Center, where he died a few hours later."  May 2, 2012 MOO at 6.

## PROCEDURAL BACKGROUND

On June 17, 2008, Coffey filed her Civil Complaint for Damages for Wrongful Death and Civil Rights Violations against the United States. See Doc. 1. On January 12, 2009, Coffey filed an action against McKinley County, an Unknown Staff Nurse, and Unknown Detention Guards 1 through 10. See Coffey v. McKinley County, No. 09-0028, Civil Complaint at 1 (D.N.M.)(Doc. 1). On October 21, 2009, the Honorable Martha Vazquez, then-Chief United States District Judge for the United States District for the District of New Mexico,[1] consolidated the civil case docket number 08-0588, Coffey's case against the United States, with the civil case docket number 09-0028, Coffey's case against McKinley County, for discovery purposes. See Order at 1-2, filed October 21, 2009 (Doc. 33). Civil case No. 09-0028 against McKinley County was assigned to United States District Judge James Browning. Judge Vazquez' Order stated that Judge Browning would preside over the discovery matters. See Order at 3.

On November 11, 2010, the parties filed a Joint Status Report and Provisional Discovery Plan that stated that "[s]upplementation under Rule 26(e) [is] due every thirty (30) days as necessary." Coffey v. McKinley County, No. 09-0028, Joint Status Report and Provisional Discovery Plan at 16 (D.N.M.)(Doc. 38)(emphasis in original)("JSR"). On November 22, 2010, the Court issued its Scheduling Order. See Doc. 42. The Court stated in the Scheduling Order: "Plaintiff shall identify to all parties in writing any expert witness to be used by Plaintiff at trial and to provide expert reports pursuant to Fed.R.Civ.P. 26(a)(2)(B) no later than **February 18, 2011**." Scheduling Order at 2 (emphasis in original). The Court also stated in the Scheduling Order: "All other parties shall identify in writing any expert witness to be used by such parties at trial and to

---

[1]The Honorable Bruce D. Black, United States District Judge, became Chief Judge of the District of New Mexico in 2010.

provide expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B) no later than **March 18, 2011**." Scheduling Order at 2 (emphasis in original).  On November 22, 2010, the Court issued its Order Adopting Joint Status Report and Provisional Discovery Plan that adopted the parties' JSR.  See Doc. 43 ("Order Adopting JSR").

On February 14, 2011, Coffey filed Dr. Paris' expert report.  See Doc. 50-1.  The Expert Report discusses the medical care Crutcher received both during and before incarceration.  See Expert Report at 3-4.  The Expert Report does not refer to any treatment Crutcher received at the Gallup Indian Medical Center or provide any opinions regarding the care he received at that location.  See Expert Report at 3-8.  On March 18, 2011, the United States filed its Certificate of Service indicating that it had served its expert witness disclosures required under rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, which included reports generated by Dr. Neal Shadoff.  See Doc. 51; Motion in Limine at 2.  On March 21, 2011, Coffey filed her Certificate of Service of Plaintiffs' Expert Witness Designation indicating that, on February 14, 2011, she "sent via US Mail a true and correct copy of the Plaintiffs [sic] Expert Witness Disclosure."  Doc. 52.

In an expert report dated July 5, 2011, Dr. Paris provided some additional discussion of care Crutcher received at the Gallup Indian Medical Center.  See Amended Expert Report at 1-6 (dated July 5, 2011)(Plaintiff's Exhibit 5).  Dr. Paris relates that he drafted this Amended Expert Report after he "received additional medical records."  Amended Expert Report at 1.  As the Amended Expert Report indicates, Crutcher received treatment at the Gallup Indian Medical Center, because "[a] referral was made to send Crutcher to the Emergency Room of the Gallup Indian Medical Center" after Crutcher reported "a painful bump in his thigh" to a nurse at MCDC.  Amended Expert Report at 3.  The Amended Expert Report describes several occasions where Crutcher went to the Gallup Indian Medical Center for care and provides opinions about the care provided there.  See

-4-

Amended Expert Report at 2-6.  For instance, the Amended Expert Report contains the following opinions regarding events that occurred at MCDC:

> The Nurse [at MCDC] took no history of previous cardiac problems or medications, neglecting to review receiving screening information which disclosed Crutcher's history of congestive heart failure and need for cardiac medications and diuretics.  The Nurse performed no physical exam beyond the leg, therefore not learning that Crutcher had an implanted cardiac defibrillator.

Amended Expert Report at 3 (emphasis omitted).  The Amended Expert Report also contains opinions regarding what occurred at Gallup Indian Medical Center:

> The Practitioner did not examine the chest, the lungs, the heart, or any other areas.  No history was taken of Crutcher's previous cardiomyopathy, congestive heart failure or medications.  The chest pocket with the defibrillator was not examined and the presence of a defibrillator was missed. . . .  The GIMC ER Practitioner responsible for the decision to treat with oral Bactrim fell below the standard of care.  Crutcher, a patient with marked valvular disease and an implantable defibrillator (a foreign body) and dilated cardiomyopathy was treated with oral antibiotics for an abscess with pus, felt to be due to Staphilococci, without regard for the very real possibility that the bacterium may colonize the patient's heart valves, produce vegetations and ultimately, overwhelming septicemia, leading to death.
>
> The second GIMC ER Practitioner fell below the standard of care.  An abnormal pulse oxymetry reading of 92% was ignored.  The Practitioner did not examine the chest, the lungs, the heart, or any other areas.  No history was taken of Crutcher's previous cardiomyopathy, congestive heart failure or medications.  The chest pocket with the defibrillator was not examined and the presence of a defibrillator was missed.  A patient with marked valvular disease and an implantable defibrillator (a foreign body) and dilated cardiomyopathy was treated with oral antibiotics for an abscess with pus, felt to be due to Staphilococci, without regard for the very real possibility that the bacterium may colonize the patient's heart valves, produce vegetations and ultimately, overwhelming septicemia, leading to death.

Amended Expert Report at 3-4.

There is no filing or certificate of service indicating when Coffey served the Amended Expert Report on the United States, but the parties do not appear to dispute that the United States received the Amended Expert Report on July 11, 2011.  See Motion in Limine at 3.  The parties deposed Dr. Paris on July 19, 2011.  See Deposition of Dr. Joseph E. Paris (taken July 19, 2011),

filed May 22, 2012 (Doc. 166-1)("Paris Depo."). At the deposition, in response to a question asking him why he amended his report, Dr. Paris stated that the basis for amending his report was that "[t]he original report was prepared without three key documents," specifically "the Gallup Indian Health medical records," "the deposition of D. [sic] Challapalli," and "the expert report of Dr. Neal Shadoff." Paris Depo. at 77:6-25. Dr. Paris stated that "the bulk of the modifications of my expert report was [sic] due to having received the Gallup Indian Health Medical Center records." Paris Depo. at 77:20-24. In response to a question asking him why it took him approximately four months to amend his report, Dr. Paris responded: "I don't know. Writing a report is a complicated matter. I work as I can. I have many clinical obligations." Paris Depo. at 78:1-12. When asked how Dr. Shadoff's expert report affected his opinions, Dr. Paris stated that Dr. Shadoff's report "didn't affect my report one way or the other." Paris Depo. at 79:7-11.

On July 14, 2011, the Court granted a joint motion to extend the discovery deadline from June 30, 2011 until July 30, 2011, for the purpose of allowing the parties to take certain depositions. See Coffey v. McKinley County, No. 09-0028, Order to Extend Discovery Deadline at 2 (D.N.M)(Doc. 72). On July 29, 2011, the parties filed a joint motion to consolidate the civil case docket number 08-0588 with the civil case docket number 09-0028 case for trial purposes. See Joint Motion and Memorandum for Consolidation of Cases for Trial Before United States Magistrate Judge (Doc. 62). On August 1, 2011, the United States filed its Defendant United States of America's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Supporting Memorandum of Law. See Doc. 63. On August 22, 2011, Judge Vazquez granted the motion seeking consolidation of the cases for trial purposes and stated that Judge Browning would try both cases. See Order (Doc. 66).

On November 14, 2011, the Court filed its Memorandum Opinion and Order granting in part

and denying in part Coffey's motion seeking leave to amend her pleadings. See Memorandum Opinion and Order at 1-2 (Doc. 110)("Nov. 14, 2011 MOO"). The Court allowed Coffey to amend her pleadings, but did not permit her to assert a medical negligence/malpractice claim or theory against the United States. See Nov. 14, 2011 MOO at 2. The Court permitted her to assert the following theories of wrongful death/negligence against the United States: (i) negligent screening; (ii) negligent transfer; and (iii) negligent hand off. See Nov. 14, 2011 MOO at 1-2.

The basic premise of Coffey's negligent screening theory is that: (i) the Washoe County Jail kept complete medical records for Crutcher; (ii) the BIA had no policy or procedure to take that information from the Washoe County Jail; (iii) there were not adequate procedures in place to screen inmates' medical conditions to ensure that transferring them would be appropriate; and (iv) the BIA did not transmit any information regarding Crutcher's medical condition to MCDC officials when it transferred him to the MCDC's custody. See Errata: Amended and Consolidated Complaint ¶¶ 20, 23, at 5-6, filed February 1, 2012 (Doc. 118)("Errata Complaint"). The basic premise of Coffey's negligent transfer theory is that: (i) the BIA transferred Crutcher "nearly 900 miles from his family" where he could not easily reach his family; (ii) the BIA transferred him to a facility, the MCDC, that "did not have adequate examinations or preventative medical care as adopted by other similar jails in the United States"; and (iii) the BIA did not have procedures in place to transfer medical property, such as medications, as part of transferring inmates. Errata Complaint ¶¶ 27-28, 31-33, at 7. Coffey's negligent-hand-off theory relies on many of the same facts as the other two theories she has asserted, including that "[t]he BIA did not determine that the" MCDC "was adequate to house an inmate with Andrew Crutcher's medical problems," specifically his congestive heart failure. Errata Complaint ¶¶ 33, 35, at 7-8.

On May 10, 2012, the United States filed its Motion in Limine. In the Motion in Limine, the

United States "seeks to have this Court preclude the testimony of Plaintiffs' expert witness, Joseph E. Paris, Ph.D., M.D., pertaining to opinions expressed in his Amended Expert Witness Report dated July 5, 2011, which were not contained in his Expert Witness Report Dated December 24, 2010." Motion in Limine at 1.  The United States relates that, "[o]n July 11, 2011, approximately one week before the scheduled deposition of Dr. Paris, the United States received Plaintiffs' Disclosure of Amended Expert Witness Report containing a report from Dr. Paris dated July 5, 2011."  Motion in Limine at 3.  It represents that the amended "report contained numerous new opinions concerning alleged medical malpractice at the Gallup Indian Medical Center -- claims never asserted or properly exhausted in the administrative claim" that Coffey filed, "never asserted in any of the Plaintiffs' various Amended and Consolidated Complaints and never addressed by either Defendant McKinley County's expert witness or Defendant United States of America's expert witness in their expert reports."  Motion in Limine at 3.  The United States contends that "[t]he Amended Expert Witness Report is not a supplemental report nor is it proper rebuttal," because rule 26(a)(2)(D) of the Federal Rules of Civil Procedure "provides that a party may disclose expert testimony if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), <u>within 30 days after the other party's disclosure</u>."  Motion in Limine at 3 (emphasis in original).  The United States contends that the amended report does not comply with rule 26(a)(2)(D) for two reasons, specifically because: (i) "neither Defendant United States' nor Defendant McKinley County's expert witnesses opined concerning Crutcher's treatment at the Gallup Indian Medical Center because that was not identified by Plaintiffs as an issue in the case;" and (ii) "the Amended Expert Report was not produced within 30 days of the date Defendants identified their expert witnesses."  Motion in Limine at 3.

The United States represents that it made available on May 7, 2009, approximately twenty

months earlier, some of the materials Dr. Paris states were new materials upon which he relied in his amended report, specifically the "Gallup Indian Health Medical Records for Andrew Crutcher." Motion in Limine at 4.  It represents that Coffey produced these same medical records in her initial disclosures on November 18, 2010.  See Motion in Limine at 4.  The United States contends that, based on the timing of those events, "[t]here is no doubt that Plaintiffs' counsel had possession of the Gallup Indian Medical Center medical records for Andrew Crutcher and could have provided them to her expert witness, Dr. Paris, long before he authored his expert report dated December 24, 2010."  Motion in Limine at 4.  The United States argues that "[t]here is no justifiable reason to permit Plaintiffs' Amended Expert report," particularly given that, "in the Memorandum Opinion and Order entered November 24, 2011, this Court specifically precluded Plaintiffs from asserting any medical malpractice claim or theory against any federal facilities."  Motion in Limine at 5.

On May 21, 2012, Coffey filed her Opposition to USA's Motion in Limine to Preclude Testimony of Plaintiffs' Expert Witness Which Was Not Included in His Initial Expert Report by United States of America.  See Doc. 156 ("Response").  Coffey represents that Dr. Paris needed to amend his report, because Dr. Shadoff, one of the United States' experts, changed one of his opinions regarding whether Crutcher died of staphylococcus aureus[2] -- an opinion with which Coffey asserts Dr. Paris originally had no disagreement.  See Response at 2.  Coffey notes that Dr. Shadoff changed his opinion "without benefit of a supplemental report."  Response at 2.  She asserts that Dr. Paris "believed that it was professionally responsible to put his supplemental findings in writing for the benefit of the Defendant that was deposing him which occurred a week before his

---

[2]Staphylococcus aureus "is a bacterial species" that "is the most common species of staphylococcus to cause Staph infections."  Staphylococcus Aureus, Wikipedia, http://en.wikipedia.org/wiki/Staphylococcus_aureus.

deposition." Response at 2-3. She argues that the disclosure of the amended expert report was timely under "Federal Rule 26(2)" providing that "the disclosure must be made at least 90 days prior to trial" for supplementation of expert reports. Response at 3.

On May 22, 2012, the United States filed its Defendant's Reply to Plaintiff's Opposition to USA's Motion in Limine to Preclude Testimony of Plaintiffs' Expert Witness (Doc. No. 156). See Doc. 166 ("Reply"). The United States contends that "Plaintiff's counsel sets out questions and answers without identifying from what source or page the questions and answers are taken." Reply at 1. Quoting from Dr. Paris' deposition testimony, the United States relates that Dr. Paris stated that the basis for amending his report was that "[t]he original report was prepared without three key documents," specifically "the Gallup Indian Health medical records," "the deposition of D. [sic] Challapalli," and "the expert report of Dr. Neal Shadoff." Reply at 2 (quoting Deposition of Dr. Joseph E. Paris at 77:6-25 (taken July 19, 2011), filed May 22, 2012 (Doc. 166-1)("Paris Depo.")). The United States directs the Court to Dr. Paris' testimony that "the bulk of the modifications of my expert report was [sic] due to having received the Gallup Indian Health Medical Center records." Reply at 2 (emphasis omitted)(quoting Paris Depo. at 77:6-25). The United States also asks the Court to consider that Dr. Paris did not have an explanation for why "it took four months" for him "to amend [his] report." Reply at 2 (quoting Paris Depo. at 78:1-12). The United States also notes that Dr. Paris indicated that Dr. Shadoff's report "didn't affect [Dr. Paris'] report one way or the other." Reply at 2 (quoting Paris Depo. at 79:7-11). The United States relates that the "amended report criticizes the medical care given to Andrew Crutcher by medical care providers at the Gallup Indian Medical Center" even though the Court precluded Coffey "from asserting any medical malpractice claim or theory against any federal facilities" in its Nov. 14, 2011 MOO. Reply at 3.

At the hearing on May 23, 2012, the Court recognized that the problems presented by the

supplementation of Dr. Paris' Report are not as prejudicial to the opposing party as it has seen in other cases -- such as supplementation on the eve of trial.  See Transcript of Hearing at 4:4-17 (taken May 23, 2012)(Court)("Tr.").[3]  The United States contended that many of the matters contained in the amended expert report could have been disclosed at an earlier date.  See Tr. at 4:22-5:12 (Mitchell).  The United States also argued that the matters which Dr. Paris included in his amended report are no longer relevant given that McKinley County is not a defendant in the case and that the Court has precluded Coffey from asserting a medical negligence claim or theory against the United States.  See Tr. 7:9-13 (Court, Mitchell).  Coffey responded that it is necessary for Dr. Paris to present this evidence to establish that the MCDC was not an adequate facility to house Crutcher.  See Tr. at 7:20-8:2 (Court, Hearne).  She argued that the MCDC improperly delayed sending Crutcher for medical care in light of his condition.  See Tr. at 8:19-9:6 (Hearne).  The Court noted that, while it had precluded Coffey from presenting a medical negligence claim or theory, it did not read its Nov. 14, 2011 MOO as precluding her from presenting evidence that may in some way bear on medical negligence but is otherwise relevant.  See Tr. at 14:7-12 (Court).  The United States asserted that it still had various jurisdictional and exhaustion arguments regarding Coffey's claims that it intends to raise at trial.  See Tr. at 14:24-15:4 (Mitchell).  The Court noted that there is a distinction between the claim having been exhausted and evidence that may relate to that claim.  See Tr. at 15:5-14 (Court).  The United States noted the potential problems of a defendant in its position having to defend against conduct at a variety of facilities over which it may have had no control or influence -- particularly given that it has no expert to assist it in doing so.  See Tr. at 15:15-16:21 (Mitchell).  The United States asked, if the Court were to allow testimony regarding care at the

---

[3]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

Gallup Indian Medical Center, if its expert, Dr. Shadoff, could have leeway to address events that occurred at the Gallup Indian Medical Center.  See Tr. at 18:1-4 (Mitchell).  Coffey agreed that doing so would be appropriate.  See Tr. at 18:5-14 (Court, Hearne).

## LAW REGARDING MODIFICATION OF SCHEDULING ORDERS

"The District Court has wide discretion in its regulation of pretrial matters."  Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990).  Scheduling orders, however, "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Accord Street v. Curry Bd. of Cnty. Comm'rs, No. 06-0776, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning, J.).  The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.  Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test.  Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

The United States Court of Appeals for the Tenth Circuit has held that the concepts of good cause, excusable neglect, and diligence are related.   "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  Street v. Curry Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *6.  "The Tenth Circuit . . . has recognized the interrelation between 'excusable neglect' and 'good cause.'"  Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(citing In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996)).  In In re Kirkland, the Tenth Circuit dealt with the definition of "good cause" in the context of rule 4(j), and noted:

> [W]ithout attempting a rigid or all-encompassing definition of good cause, it would appear to require at least as much as would be required to show excusable neglect,

as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified' is normally required.

86 F.3d at 175 (emphasis in original)(quoting <u>Putnam v. Morris</u>, 833 F.2d 903, 905 (10th Cir.1987))(internal quotation marks omitted).  The Tenth Circuit explained that <u>Putnam v. Morris</u> "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"  <u>In re Kirkland</u>, 86 F.3d at 175.

Other district courts within the Tenth Circuit have held that "the good cause standard primarily considers the diligence of the party . . . [.] The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  <u>Pulsecard, Inc. v. Discover Card Servs. Inc.</u>, 168 F.R.D. at 301 (alteration in original)(internal quotation marks omitted).  In the United States District Court for the District of Utah, the Honorable Dale A. Kimball, United States District Judge, found "good cause" existed to amend the court's scheduling order when the court decided to permit the plaintiff's counsel to withdraw as counsel.  <u>Kee v. Fifth Third Bank</u>, No. 2:06-cv-00602-DAK-PMW, 2008 WL 183384, at *1 (Jan. 17, 2008 D. Utah).  Judge Kimball reasoned: "[I]n light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order."  <u>Kee v. Fifth Third Bank</u>, 2008 WL 183384, at *1.

## **LAW REGARDING SUPPLEMENTATION OF EXPERT REPORTS**

Rule 26(a)(2)(B) provides that an expert witness's report should contain "a complete statement of all [the] opinions" he or she will be expressing. Fed. R. Civ. P. 26(a)(2)(B).  As the Tenth Circuit has noted, the purpose of rule 26(a) expert disclosures is "not only to identify the

expert witness, but also 'to set forth the substance of the direct examination.'" Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir. 2002)(citing Fed. R. Civ. P. 26(a)(2) advisory committee's note to the 1999 amendments).  The Tenth Circuit believes that "[s]uch disclosure is necessary to allow the opposing party 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" Jacobsen v. Deseret Book Co., 287 F.3d at 953 (citing Fed. R. Civ. P. 26(a)(2) advisory committee's note to 1999 amendments). Pursuant to rule 26(e), a party is under a duty to supplement a rule 26(a)(2)(B) expert report "if the party learns that in some material respect the information disclosed is incomplete and if the additional or corrective information has not otherwise been made known to the other parties . . . ." Fed. R. Civ. P. 26(e).

"The penalty for failure to satisfy rule 26(e) is severe." Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. 08-1101, 2009 WL 3672502, at *3 (D.N.M. Sept. 29, 2009)(Browning, J.). Rule 37 states that, if one "fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Whether a rule 26(a) violation is justified or harmless is a question for the district court's broad discretion.  See Woodworkers Supply, Inc. v. Principal Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999)(holding that a damage theory purportedly not disclosed until trial did not warrant exclusion).  The Tenth Circuit has described this standard as follows:

> A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose.  Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 993.

In Guidance Endodontics, LLC v. Dentsply International, Inc., the Court did not permit one of the parties to supplement its expert report given the timing of the supplementation and the harm to the opposing side.  See 2009 WL 3672502, at *4.  The Court found it particularly relevant that the party seeking to supplement "had all of the information necessary to develop this supplemental report since June 17, 2009 -- two weeks before the deadline for designating rebuttal experts, a month and a half before the deadline for supplementing expert reports, and three months before trial," but did not give the supplement "to the Defendants until the day the trial began."  Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *4.  Relying on the Tenth Circuit's case in Jacobsen v. Deseret Book Co., the Court noted in a discussion of that case: "The Tenth Circuit appeared to find that the fact that the opposing party was unaware of the substance of the witnesses direct examination testimony was sufficient prejudice to weigh against permitting amendment."  Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *4.  The Court, addressing the contents of the supplemental expert report and the timing issues, stated:

> While the Defendants are not entirely in the dark regarding Desrosiers' testimony, the timing of the supplemental report is such that it will impede the Defendants' ability to rebut any testimony based on it.  The trial of a case is a substantial undertaking that consumes most or all of an attorney's time.  Delivering an expert report to opposing counsel on the first day of trial, therefore, is not helpful.  There is no time to prepare a rebuttal expert or investigate the principles underlying the expert's opinions.
>
> In this case, the Defendants have little if any time to prepare a new or existing expert witness by sending the witness to the Johnson City facility nor doing additional research to rebut Desrosiers' new expected testimony.  Furthermore, the supplemental report ambiguously references "some recent research" that underlies these new opinions.  With no indication what that research was and no properly informed expert witness to prepare the Defendants' counsel, the Defendants would be left going fishing in the expert's superior knowledge on cross-examination, which is never an enviable position for one to be in.

-15-

Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *5 (citation omitted).  The

Court also concluded that, given that the case was currently in trial, "neither party can substantially

decrease the level of prejudice."  Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL

3672502, at *5.  The Court also found it significant that the Defendants were still encumbered by

a preliminary injunction the Court had earlier issued.  Guidance Endodontics, LLC v. Dentsply Int'l,

Inc., 2009 WL 3672502, at *5.  The Court also noted that the particularly late timing of the

disclosure was disruptive, because

> if the Court were to put the trial on hold to allow the Defendants to prepare for this
> testimony, even if it only took one day, someone would have to rework the travel
> arrangements of many of the out-of-town witnesses and the trial would not be
> completed within the three weeks that the Court has allotted for it.

Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *5.

## ANALYSIS

The Court will deny the Motion in Limine.  The Court concludes that Coffey's

supplementation of her expert report was not untimely.  Furthermore, given that the disclosure

occurred approximately ten months before trial, and before the United States deposed Dr. Paris and

before Coffey deposed Dr. Shadoff, the Court considers the prejudice and surprise to the United

States, if any, to be low.  Moreover, the United States could have cured any prejudice.  Given that

Coffey is asserting a theory against the United States that the MCDC was an improper facility at

which to house Crutcher, and that the applicable factors weigh in favor of permitting testimony on

this issue, the Court will permit Dr. Paris to testify on the matters in the amended expert report.  The

Court will allow the United States' expert, Dr. Shadoff, to testify on the same matters.[4]

---

[4]The Court notes that, at trial, Dr. Shadoff testified that he supplemented his report as well.

I.      **THE UNITED STATES HAS NOT ESTABLISHED THAT THE DISCLOSURE OF DR. PARIS' AMENDED EXPERT REPORT WAS UNTIMELY.**

Coffey argues that her disclosure of Dr. Paris' amended expert report was timely, because "Federal Rule 26(2) expressly provides that absent a court order (and since no court order spoke to supplemental report) the disclosure must be made at least 90 days prior to the date set for trial." Response at 3.  The deadline for Coffey to disclose her expert reports was February 18, 2011 under the Court's Scheduling Order.  See Scheduling Order at 2.  Rule 26(a)(2)(E) provides that parties must supplement expert reports "when required under Rule 26(e)."  Fed. R. Civ. P. 26(a)(2)(E). Rule 26(e)(2) provides that, for expert witnesses, "[a]ny additions or changes" to their report "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  Fed. R. Civ. P. 26(e)(2).  Nevertheless, the parties agreed in their JSR that "[s]upplementation under Rule 26(e) [is] due <u>every thirty (30) days as necessary</u>."  JSR at 16 (emphasis in original).  The Court then adopted this agreement in its Order Adopting JSR.  See Order Adopting JSR at 1.

While there are no certificates of service or filings that indicate the precise date Coffey served the United States with the amended expert report, the parties do not appear to dispute that the service occurred on approximately July 11, 2011 -- one week before Dr. Paris' deposition.  See Motion in Limine at 2-3.  Dr. Paris stated in his deposition that he received the records from Gallup Indian Medical Center on approximately March 30, 2011, and that it took him approximately four months to amend his expert report.  See Paris Depo. at 77:6-78:14.  The United States has not presented evidence that clarifies, however, when exactly Dr. Paris formed these new opinions.  In response to a question asking him why it took him approximately four months to amend his report, Dr. Paris responded: "I don't know.  Writing a report is a complicated matter.  I work as I can.  I have many clinical obligations."  Paris Depo. at 78:1-12.  Consistent with his explanation in his

deposition that he was busy with other matters, several months may have passed before he had an opportunity to review these new materials and formulate new opinions. The United States has not established when Dr. Paris formed his supplemental opinions and when there was new evidence that needed to be discovered. Accordingly, it is not clear that Coffey did not timely disclose the new opinion, within the supplement deadline in the JSR that the Court adopted. Furthermore, under rule 26(a)(3), pretrial disclosures are not due until thirty days before trial. See Fed. R. Civ. P. 26(a)(3) ("Unless the court orders otherwise, these disclosures must be made at least 30 days before trial."). While there may have been some delay in providing materials to Dr. Paris and some delay in his formulating these additional opinions, the Court does not believe any of these delays were intentional such that Coffey was attempting to engage in gamesmanship with the supplementation. The Court finds it particularly important that the United States had the supplemental material before it conducted Dr. Paris' deposition. It might be more problematic if Coffey had failed to provide these materials before the deposition. Thus, the disclosure was timely.

This case also has an unusual factor. In most cases, the defendant gets the expert reports of the plaintiff's experts and deposes the plaintiff's experts before the defendant has to produce the reports of the defendant's experts. Coffey had to provide, however, her expert reports by February 18, 2011 and the United States had to provide its expert reports by March 18, 2011. The United States did not depose Dr. Paris until later than a defendant normally would by waiting until after it had produced its expert report. This voluntary relinquishment of a litigation advantage reduces any prejudice from Dr. Paris supplementing his report shortly before his deposition occurred.

The Court recognizes that some of the opinions Dr. Paris renders in the Amended Expert Report address care given at the Gallup Indian Medical Center that was never discussed in his original Expert Report. Thus, some of the material that Dr. Paris added appear to be new opinions

rather than supplements to the opinions he originally formed.  As Professor James Moore has stated: "A party may not use a supplemental report to disclose information that should have been disclosed in the initial expert report, thereby circumventing the requirement for a timely and complete expert witness report."  6 J. Moore, Moore's Federal Practice § 26.131[2], at 26-582 (3d ed. 2012).  Thus, to the extent any opinions in the Amended Expert Report are new opinions, the Court will evaluate whether it is proper to permit Dr. Paris to testify on them.

## II.     THE COURT CONCLUDES THAT, TO THE EXTENT THE DISCLOSURES WERE UNTIMELY, THE APPLICABLE FACTORS COUNSEL IN FAVOR OF PERMITTING DR. PARIS TO TESTIFY ON THESE MATTERS.

Rule 26(a)(2)(B) provides that an expert witness's report should contain "a complete statement of all [the] opinions" he or she will be expressing.  Fed. R. Civ. P. 26(a)(2)(B).  As the Tenth Circuit has noted, the purpose of rule 26(a) expert disclosures is "not only to identify the expert witness, but also 'to set forth the substance of the direct examination.'"  Jacobsen v. Deseret Book Co., 287 F.3d at 953.  The Tenth Circuit believes that "[s]uch disclosure is necessary to allow the opposing party 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'"  Jacobsen v. Deseret Book Co., 287 F.3d at 953.  Whether a rule 26(a) violation is justified or harmless is a question for the district court's broad discretion.  Woodworkers Supply, Inc. v. Principal Life Ins. Co., 170 F.3d at 993 (holding that a damage theory purportedly not disclosed until trial did not warrant exclusion).  The Tenth Circuit has described this standard as follows:

> A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose.  Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 993.  The Tenth Circuit has

applied this four-factor test to failures to timely disclose expert opinions that fall within rule 26(a).

See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 993.

First, there appears to be little or no prejudice, or surprise, to the United States.  In its Nov.

14, 2011 MOO, based on the untimeliness of the motion seeking leave to amend pleadings and the

assertion of new theories, the Court precluded Coffey from asserting a medical negligence claim or

theory against the United States.  See Nov. 14, 2011 MOO at 27.  Specifically, the Court found:

> The Court will, however, deny leave to amend regarding the portions of the
> Third Amended and Consolidated Complaint where Coffey seeks to assert a medical
> malpractice claim or theory against any federal facilities.  Coffey agreed at the
> hearing that the Court could deny leave to amend with respect to these medical
> malpractice claims if it granted her leave to amend on her negligence/wrongful death
> claim against the United States that appeared in her earlier pleadings.  Additionally,
> granting leave to amend on these claims would result in undue prejudice to the
> United States.  These claims did not appear in any prior pleadings.  Discovery in this
> case has already concluded, and the United States has pointed out that it would
> require a great deal of additional discovery to adequately defend against these
> claims.  Furthermore, the United States has already begun filing dispositive motions
> against Coffey's claims.  Under both the more liberal rule 15 standard, undue delay,
> and rule 16's good cause standard, the Court concludes that adding in these medical
> malpractice claims at this time would cause undue prejudice to the United States.

Nov. 14, 2011 MOO at 27 (citation omitted).  While the United States has maintained that it does

not have an expert to defend against all conduct in which the Gallup Indian Medical Center as well

as the MCDC, it had approximately ten months to find one if it needed one.  Additionally, to the

extent the evidence has no relevance to the issues in the case, the United States may object to it as

the questioning develops.  There is no sound basis to exclude all such opinions pretrial, as some may

be relevant.  The evidence of what occurred at Gallup Indian Medical Center, while not directly

bearing on the United States' liability, could still be relevant for matters such as damages.  Thus,

there would appear to be little or no prejudice that would result to the United States if Dr. Paris

testified on all the matters he added in his amended expert report -- subject to relevance limitations that the United States may raise as appropriate.  It is worth noting that, during Dr. Paris' testimony at trial, he did not opine on the matters the United States finds objectionable.

Second, the United States had sufficient opportunity to cure the prejudice.  It had the Amended Expert Report before it conducted Dr. Paris' deposition and could thus question him regarding these matters.  If it needed additional experts or additional expert evidence from one of its current experts on these matters, it could have sought relief first from Coffey and, if the parties could not cooperate and work out any disagreements, from the Court to that effect.  Moreover, Coffey has maintained throughout the lawsuit that the BIA should not have selected the MCDC as a facility to house Crutcher, so that the United States was on notice of some of the opinions in the supplemental report.

Third, it does not appear that the evidence would cause significant disruptions at the trial. For instance, there is no indication that the United States would need additional witnesses to combat improper testimony.  It may object to evidence that does not bear on its liability, and the Court will exclude the evidence if appropriate or permit the evidence if it bears on relevant matters -- such as Crutcher's damages or as background information.  Given that the Amended Expert Report has been available to the United States for approximately ten months, any significant disruption is partially the United States' fault.  Unlike the situation in Guidance Endodontics, LLC v. Dentsply International, Inc., there is no risk the Court will have to delay the trial.  See 2009 WL 3672502, at *5.  In that case, the particularly late timing of the disclosure was disruptive, because

> if the Court were to put the trial on hold to allow the Defendants to prepare for this testimony, even if it only took one day, someone would have to rework the travel arrangements of many of the out-of-town witnesses and the trial would not be completed within the three weeks that the Court has allotted for it.

Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *5.

Fourth, it does not appear that Coffey has acted in bad faith or willfully in causing the delay, although the delay does not appear to be entirely consistent with her explanation that she was surprised by the United States' expert, Dr. Shadoff, modifying one of his opinions. Dr. Paris stated that the basis for amending his report was that "[t]he original report was prepared without three key documents," specifically "the Gallup Indian Health medical records," "the deposition of D. Challapalli," and "the expert report of Dr. Neal Shadoff." Paris Depo. at 77:6-25. Dr. Paris related that "the bulk of the modifications of my expert report was [sic] due to having received the Gallup Indian Health Medical Center records." Paris Depo. at 77:6-25. He also related that Dr. Shadoff's report did not impact his decision to make amendments in a significant way. See Paris Depo. at 79:7-13. Nevertheless, even though there may have been some delay, the Court does not believe that the fourth factor weighs against excluding the evidence given that the Court does not believe that Coffey acted in bad faith or willfully. This situation is not one where Coffey waited until the eve of trial to disclose the evidence.

Furthermore, while the Court recognizes that Coffey agreed that the Court could preclude her from asserting a medical negligence theory against the United States, and the Court then did so, it did not preclude her from presenting evidence that may in some way bear on those issues, but is otherwise relevant to the claims and theories she has asserted. See Nov. 14, 2011 MOO at 2, 27. Many of the issues in this case relate to events that occurred at MCDC, both before and after Crutcher arrived there. Thus, it would be difficult -- pretrial -- to draw a dividing line between evidence that goes solely towards a medical negligence claim or theory, and evidence that bears on other relevant matters in the case. For instance, many of the events that occurred at the MCDC after Crutcher arrived, and potentially events at the Gallup Indian Medical Center, could be relevant to

Crutcher's damages or relevant as background information.  See Noland v. City of Albuquerque, 779 F.Supp.2d 1214, 1226 (D.N.M. 2011)(Browning, J.)("Failing to exhaust administrative remedies does not 'bar an employee from using the prior acts as background evidence in support of a timely claim.'" (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)); King v. Salazar, No. 05-0575, 2009 WL 1311521, at * (D.N.M. Mar. 16, 2009)(Browning, J.)("It would be odd to conclude that evidence concerning later events could not be presented to the jury when even evidence about a time-barred discrete act can be used as background evidence for a discrimination or retaliation claim.").

The Court believes it is appropriate to permit Dr. Paris to testify on all the matters in his Amended Expert Report to the extent they are relevant.  They may provide background information or may help prove up damages.  If the evidence is not relevant to the United States' liability, the United States may ask the Court to limit its consideration of a particular piece of evidence to only proper purposes.  While the Court now has, albeit in a delayed manner given that the parties did not present the Amended Expert Report in their filings with the Court, the Amended Expert Report, it is still difficult for the Court at this time to say that none of this evidence would be relevant without more context regarding how Coffey intends to use the evidence as well as the relevant facts.  The United States is not precluded from objecting to what it contests as irrelevant evidence at trial.  If the United States believes that the claims Coffey asserts against it have not been properly exhausted through the appropriate administrative procedures, the Court will hear those legal arguments.  The Court will likewise bear in mind when issuing its findings of fact and conclusions of law that it has precluded Coffey from asserting a medical negligence claim theory.  The Court will allow the United States' expert, Dr. Shadoff, to testify on the same matters.  Thus, the Court will deny the

Motion in Limine.[5]

      **IT IS ORDERED** that the Defendant United States of America's Motion in Limine to

Preclude Testimony of Plaintiffs' Expert Witness Which Was Not Included in His Initial Expert

Report, filed May 10, 2012 (Doc. 151), is denied.

                     _____

                     UNITED STATES DISTRICT JUDGE

*Counsel*:

Scott E. Borg
Barber & Borg, LLC
Albuquerque, New Mexico

-- and --

Sheryl Serreze
National Legal Team
Reno, Nevada

-- and --

Robert R. Hager
Treva J. Hearne
Hager & Hearne
Reno, Nevada

     *Attorneys for the Plaintiff*

---

    [5]At trial, the United States objected to the admission of Dr. Paris' amended expert report. See Transcript of Trial at 61:10-13 (taken May 24, 2012)(Mitchell)("Trial Tr."). The Court sustained the objection on hearsay grounds. See Trial Tr. at 61:19-62:1 (Court). Accord Coffey v. United States, No. 08-0588, 2011 WL 6013611, at *4 n.26 (D.N.M. Nov. 28, 2011)("Coffey offers the report for the truth of the matters asserted therein. Consequently, this evidence is hearsay, because it is unattested."). The Court generally excludes the written reports unless both parties stipulate to the admissibility of all reports. In this case, the United States did not introduce Dr. Shadoff's reports, and only objected to the amended expert report. See Trial Tr. at 61:10-13 (Mitchell). The United States did not object to Dr. Paris' first report, and the Court admitted it.

Kenneth J. Gonzales
  United States Attorney
Jan Elizabeth Mitchell
  Assistant United States Attorney
Dori Ellen Richards
  Special Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Defendant*